[Nos. A124038, A124048. First Dist., Div. Five. June 28, 2010.]

CELLPHONE TERMINATION FEE CASES.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.C.

## COUNSEL

Curtis & Green, Mitchell J. Green; LakinChapman and Jonathan B. Piper for Objectors and Appellants Dawn M. Zobrist and Danie van den Berg in No. A124038.

Steve A. Miller for Objectors and Appellants Ann Talley and John Talley in No. A124048.

Bramson, Plutzik, Mahler & Birkhaeuser, Alan R. Plutzik, L. Timothy Fisher; Positive Legal Group, Jacqueline E. Mottek; Franklin & Franklin, J. David Franklin; and Scott A. Bursor for Plaintiffs and Respondents Molly White, Christina Nguyen, Patricia Brown and Harold Schroer.

Munger, Tolles & Olson, Henry Weissmann, Paul Watford and Jonathan H. Blavin for Defendant and Respondent Cellco Partnership.

**OPINION**

**BRUINIERS, J.**—This is a consolidated appeal in one of several coordinated class actions that challenge wireless telephone carriers' imposition of early termination fees (ETF's) on customers seeking to cancel cellular telephone contracts. The defendant/respondent in this proceeding is Cellco Partnership doing business as Verizon Wireless (Verizon). The case against Verizon (*White v. Cellco Partnership* (2008, No. RG04137699) (*White*)) proceeded to jury trial on June 16, 2008, in the Alameda County Superior Court on the claims of California class members. On July 8, 2008, after plaintiffs/respondents[1] had rested their case and the defense presentation had commenced, the parties advised the court that they had signed a memorandum of understanding outlining the terms of settlement. The settlement also encompassed claims of nationwide certified class claimants (excluding California class members) in a proceeding then pending before the American Arbitration Association (AAA), as well as two actions filed in federal district courts.

The terms of the settlement required Verizon to provide a common fund of $21 million, from which all legal fees and costs, including notice and administrative costs, would be paid and from which class members who had actually paid or had been assessed an ETF would be reimbursed, with pro rata reduction, if required, based on the number of claimants. The trial court granted preliminary approval on July 11, 2008. At a noticed hearing on November 6, 2008, appellants[2] objected to final approval, contending that notice of the settlement was inadequate, and that the settlement terms were not fair, reasonable and adequate. Appellants further challenge the propriety of incentive payments awarded to four named class representatives. The trial court approved the settlement. We affirm. In the published portions of this opinion, we discuss the adequacy of notice to the class and the propriety of incentive compensation to the class representatives.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Verizon is a national cellular telephone service provider. In common with a number of other providers, Verizon charged ETF's to subscribers who cancelled service agreements prior to the scheduled termination dates. Verizon charged a flat fee of $175, regardless of when the cancellation occurred in the contract term.

---

[1] Plaintiffs/respondents are Molly White, Christina Nguyen, Patricia Brown and Harold Schroer and are collectively referred to as "plaintiffs."

[2] We refer to Dawn Zobrist and Danie van den Berg (objectors/appellants in appeal No. A124038) and Ann and John Talley (objectors/appellants in appeal No. A124048) collectively as "appellants."

Plaintiffs in the underlying case initially filed suit on July 23, 2003, in Alameda County against Verizon and six other cellular service providers alleging that the ETF's violated California consumer protection laws, and constituted unauthorized penalties under Civil Code section 1671.[3] (*Marlowe v. AT&T Corporation* (Super. Ct. Alameda County, complaint filed 2003, No. RG03108118).) This action and others were coordinated under Judicial Council order (Code Civ. Proc., § 404.3; Cal. Rules of Court, rule 3.524)[4] before Judge Ronald Sabraw in the Alameda County Superior Court as the *Cellphone Termination Fee Cases* (JCCP No. 4332). (*Gatton, supra*, 152 Cal.App.4th at p. 575, fn. 1.)

Pursuant to case management orders in the coordination proceedings, the ETF claims against Verizon were separately pled in a consolidated amended complaint in *White*. On June 9, 2006, Judge Ronald Sabraw certified a class in that action and in related cases defined as: " 'All persons who (1) had a wireless telephone personal account with [Verizon] with a California area code and a California billing address[] who (2) cancelled the account at any time from July 23, 1999, through [March 18, 2007], and (3) were charged an early termination fee in connection with that cancellation.' "[5] The class certification was "expressly predicated" on an "aggregate approach to monetary relief and the related setoff and cross-claim issues." Thus, if the ETF's were found to be illegal and unenforceable, the wireless carriers would still potentially be entitled to offset against any class recovery for their actual damages in the form of lost profits.[6]

By orders dated April 4, 2008, and May 12, 2008, the superior court severed the case against Verizon (and against Sprint) from the coordinated proceeding for purposes of trial. Trial in the *White* case commenced on June

---

[3] In addition to the ETF claims, plaintiffs alleged other unfair business practices by the named defendants, including handset locking policies and deposit requirements. (*Gatton v. T-Mobile USA, Inc.* (2007) 152 Cal.App.4th 571, 575, fn. 1 [61 Cal.Rptr.3d 344] (*Gatton*).) The trial court divided the coordinated proceedings into these three substantive topics. (*Ibid.*)

[4] All further undesignated rule references are to the California Rules of Court.

[5] Judge Ronald Sabraw initially declined to certify a class consisting of current subscribers. That portion of his order was reversed by this court. (*Cellphone Termination Fee Cases* (June 9, 2008, A115457) [nonpub. opn.].)

[6] In a December 27, 2006 pretrial order, Judge Ronald Sabraw described the trial procedure as follows: ". . . The Court will permit Plaintiffs to present aggregate damage calculations for the claims of the entire class and will require the trier of fact to state the damages owed to the members of the Plaintiff class in the aggregate. The Court will also permit Defendants to present aggregate damage calculations for their cross-claims against the entire class and will require the trier of fact to state the damages that the members of the Plaintiff class might owe to Defendants. The Court will then set off the two numbers. If the net amount owed is a positive for Plaintiffs, then the Court will enter judgment in favor of the Plaintiff class for that amount. *If the net amount owed is zero or a negative for the Plaintiffs, then the Court will enter judgment of zero in favor of the Plaintiff class.* Defendants will not be permitted to recover money from the Plaintiff/Cross-Defendant class." (Fn. omitted.)

16, 2008, before Judge Bonnie Sabraw, shortly following a June 12, 2008 jury verdict in the *Sprint* case. Plaintiffs rested their case on July 2, 2008. A settlement in principle was reached by the parties on July 8, 2008. The trial judge granted preliminary approval of the proposed settlement on July 11, 2008.[7]

## The Settlement Classes

The preliminary approval order certified two settlement classes, an " 'ETF Assessed Class,' " encompassing all Verizon contract customers in the United States who were billed a flat-rate ETF by Verizon and/or its legacy companies from July 23, 1999, until the effective date of the publication notice, whether or not any portion of the ETF was actually paid, and a " 'Subscriber Class,' " defined as all persons in the United States who were or are parties to a contract for a wireless telephone personal account with Verizon and its legacy companies that included or includes a provision for a flat-rate ETF from July 23, 1999, through the effective date of the publication notice.

## The Settlement Terms

The settlement terms require Verizon to pay $21 million to a fund for the benefit of the national settlement classes, without reversion of any amounts to Verizon. Class members who paid one or more flat-rate ETF's will receive full credit as an "Allowed Claim" for amounts which the claims administrator verifies as paid based on a review of Verizon's records. The money will be distributed pro rata on each Allowed Claim in proportion to the total number of such claims to the extent that there are insufficient funds to pay all claims in full. Class members who claim that they paid a flat-rate ETF but are unable to offer any proof of such payment will receive an Allowed Claim of $25, as will class members who allege that they suffered harm as a result of having been charged a flat-rate ETF that they did not pay. The settlement further prohibits Verizon from including a flat-rate ETF in any new customer agreements for a wireless service personal account in the United States for a period of two years.

## Settlement of Related Proceedings

The settlement includes a release of the settlement classes' ETF claims against Verizon, including the claims asserted in three other pending actions.

---

[7] Pursuant to the terms of the settlement, the parties stipulated to the filing of a fourth consolidated amended complaint encompassing the expanded class claims.

*The* Brown *Arbitration*

*Brown v. Cellco Partnership* (Cir. Ct. Palm Beach County, Fla., complaint filed May 17, 2004, No. 50 2004CA005063MB-AI) (*Brown*) is an action asserting both ETF and handset locking claims against Verizon.[8] The lead plaintiff, Brown, filed a demand for class arbitration with the AAA. The AAA granted Brown's motion to certify two 49-state classes (excluding persons with a California area code and California billing address): (1) a "Payer Class: All persons in the United States who were charged an [ETF] pursuant to a [Verizon] Customer Service Agreement which contained an arbitration clause from November 1, 2000 through November 16, 2006 . . ."; and (2) a "Subscriber Class: All persons in the United States who were parties to a contract for a wireless telephone personal account with Verizon that included a provision for an [ETF] and included an arbitration clause from November 1, 2000 through November 16, 2006 . . . ." Two of the class representatives from *Brown*, Brown and Schroer, joined with the *White* plaintiffs to represent the nationwide settlement classes.[9]

*The* Waudby *Litigation*

*Waudby v. Verizon Wireless Services, LLC* (D.N.J., complaint filed Jan. 26, 2007, No. 07-0470) (*Waudby*) asserted essentially the same claims then pending in the *Brown* arbitration and sought to certify a nationwide class.[10] The arbitrator in *Brown* granted a motion to enjoin the *Waudby* litigation in March 2008.

*The* Gentry *Litigation*

*Gentry v. Cellco Partnership* (C.D.Cal., complaint filed Nov. 4, 2005, No. CV-05-07888) asserted similar ETF claims against Verizon. The case was stayed on March 22, 2006, on Verizon's motion pending resolution of ETF proceedings before the Federal Communications Commission (FCC).

---

[8] We grant Verizon's September 30, 2009 unopposed request that we take judicial notice of a class determination award by the arbitrator in the *Brown* arbitration and a subsequent correction and amendment of that order. We deny Verizon's concurrent request that we take judicial notice of an order in *Schneider v. Verizon Internet Services, Inc.* (C.D.Cal., 2009, No. CV 08-07856 R CWx) dismissing ETF claims similar to those raised here under Federal Rules of Civil Procedure, rule 12(b)(6) (28 U.S.C.). This order was not before the trial court and is irrelevant to the issues before us.

[9] One of the lead trial counsel for the class here also served as the designated lead counsel in the *Brown* arbitration.

[10] Plaintiffs contend that the pleading allegations in the *Brown* case were copied verbatim into the *Waudby* complaint by appellant Zobrist's former counsel.

*The Settlement Notices*

The stipulation and agreement of settlement provided for notice to the classes in three forms: (1) a mail notice to be sent to the last known addresses of the ETF Assessed Class; (2) a one-page short-form publication notice for publication in print media; and (3) a more detailed long-form publication notice for posting on an Internet referral site. Following preliminary approval of the settlement, including the forms of notice, the trial judge made a further sua sponte review of the form of class notice proposed in the settlement and held a subsequent hearing on July 15, 2008. As a result of that hearing the court issued an order requiring the parties to redraft the notices "with the goal of making it easy to understand for non-lawyers" and to make certain that the notice clearly explained the rights and obligations of class members in connection with the settlement. The court sought to "ensure that the notice provides absent class members with a clear picture of not only what the settlement provides, but also what it does not provide and whether it changes any existing contractual relationships between Verizon and absent class members." The parties submitted revised notices, which were approved by the court subject to some additional changes. The approved mail notice was mailed by the appointed settlement administrator to 2,771,109 identified ETF Assessed Class members[11] and the short-form publication notice was published in 17 newspapers nationally, including the Wall Street Journal, The New York Times, the Chicago Tribune, and USA Today. The parties established a Web site[12] where class members could view, among other documents, the long-form publication notice, the complaint, settlement agreement and plan of allocation, and could obtain answers to frequently asked questions (FAQ's). The Web site also allowed class members to file a claim form electronically. In addition, the settlement administrator established a toll-free telephone number to listen to FAQ's in English and in Spanish, request a claim form, or request to speak to a live operator about the settlement.

*Response to the Notice*

As of October 14, 2008, 154,992 class members had submitted claims, either electronically or in paper form. One hundred twenty-nine class members had opted out of the settlement. Eight objections were filed with the court on behalf of 11 individuals. Based on the number of claims, and after deduction of the costs of notice and attorney fees, each Allowed Claim will be paid at approximately 50 percent of the amount claimed. A class member who paid a $175 ETF will therefore receive approximately $87.50 under the terms of the settlement.

---

[11] Of the mail notices returned to the settlement administrator, 13,032 were remailed to updated addresses and 196,027 were designated by the post office as undeliverable.

[12] <http://www.VerizonETFSettlement.com> (as of June 28, 2010).

*The Objectors*

Appellants Dawn Zobrist and Danie van den Berg (collectively Zobrist) and Ann and John Talley (Talleys) are four individuals who objected to approval of the settlement. Dawn Zobrist was a member of the ETF Assessed Class, having paid a $175 ETF " 'under protest' " in March 2002. (*Zobrist v. Verizon Wireless* (2004) 354 Ill.App.3d 1139 [290 Ill.Dec. 946, 822 N.E.2d 531, 535] (*Zobrist*).)[13] Danie van den Berg was a member of the Subscriber Class who entered into a two-year Verizon contract subject to the flat-rate ETF, but did not pay a fee.[14] The Talleys alleged that they were members of the Subscriber Class, filed written objections, and appeared at the approval hearing to argue the objections.[15] Zobrist filed written objections to the settlement, appeared at the approval hearing, and was subsequently given leave to file a complaint in intervention.

On October 21, 2008, a hearing was held before Judge Bonnie Sabraw on plaintiffs' motion for final approval of the settlement. In an order dated November 6, 2008, Judge Sabraw considered and overruled the objections and granted final approval to the settlement, finding that "the total monetary and injunctive relief obtained is reasonable in light of the claims released and the risks of further litigation."[16] An amended order, correcting what the court termed "an inadvertent discrepancy between the Court's reasoning and the Court's order," but making no other changes, was filed on December 5, 2008.

Zobrist challenges the sufficiency of the notice to the class, alleging that it was both false and inadequate. She contends that the trial court abused its discretion in approving a settlement that was not fair, reasonable and adequate, asserting that the court grossly underestimated the size of the class, and therefore overestimated the value of the common fund, and that the Subscriber Class was improperly denied monetary compensation. She further alleges that class counsel and the named class representatives breached their

---

[13] Zobrist filed an action against Verizon on August 9, 2002 (*Zobrist v. Verizon Wireless* (Cir. Ct. Madison County, Ill., No. 02-L-1088)). Zobrist asserted ETF claims against Verizon on behalf of a putative Illinois class of Verizon customers. In 2004, an Illinois appellate court granted Verizon's motion to compel arbitration. (*Zobrist, supra,* 822 N.E.2d at p. 543.) The *Zobrist* case was subsequently consolidated with the *Brown* arbitration. Appellants refer to the consolidated *Brown* proceeding as the "*Zobrist*" arbitration."

[14] Danie van den Berg's declaration states that his wife was erroneously assessed an ETF following termination of one of three telephone lines at the end of the contract term, but that the assessment was reversed by Verizon after protest.

[15] The Talleys' opening brief simply joins in and adopts the Zobrist brief, without any reference to any portion of the record or citation of authority.

[16] The court also awarded fees to class counsel in the amount of $6,349,788.65 plus $1,000,211.35 in costs and expenses. The appellants did not challenge below, and do not challenge here, the court's award of fees and costs.

fiduciary duty to the class in obtaining unreasonable and excess incentive payments for the representatives. We reject each of these contentions.

## II. DISCUSSION

### A. *Standard of Review*

In a class action, the trial court has "broad discretion" to determine "whether a settlement was fair and reasonable, whether notice to the class was adequate, whether certification of the class was proper." (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 234–235 [110 Cal.Rptr.2d 145] (*Wershba*).) "Our review is therefore limited to a determination whether the record shows 'a clear abuse of discretion.' " (*Id.* at p. 235, quoting *Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1802 [56 Cal.Rptr.2d 483] (*Dunk*); see also *In re Microsoft I–V Cases* (2006) 135 Cal.App.4th 706, 723 [37 Cal.Rptr.3d 660].)

In reviewing the fairness of a class action settlement, " '[d]ue regard' . . . 'should be given to what is otherwise a private consensual agreement between the parties. The inquiry "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." [Citation.] . . .' " (*7-Eleven Owners for Fair Franchising v. Southland Corp.* (2000) 85 Cal.App.4th 1135, 1145 [102 Cal.Rptr.2d 777] (*7-Eleven*), quoting *Dunk, supra*, 48 Cal.App.4th at p. 1801.)

In considering whether a settlement is reasonable, the trial court should consider relevant factors, which may include, but are not limited to " 'the strength of [the] plaintiffs' case, the risk, expense, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement.' " (*Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116, 128 [85 Cal.Rptr.3d 20] (*Kullar*), quoting *Dunk, supra*, 48 Cal.App.4th at p. 1801; see also *In re Microsoft I–V Cases, supra*, 135 Cal.App.4th at p. 723.) A " 'presumption of fairness exists where: (1) the settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small.' " (*Kullar*, at p. 128, quoting *Dunk*, at p. 1802; see *Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 52–53 [75 Cal.Rptr.3d 413].)

## B. *Adequacy of the Settlement Notice*

 On settlement of a class action, "notice of the final approval hearing must be given to the class members in the manner specified by the court. The notice must contain an explanation of the proposed settlement and procedures for class members to follow in filing written objections to it and in arranging to appear at the settlement hearing and state any objections to the proposed settlement." (Rule 3.769(f).)

The rules specify the content of the notice to class members and the factors the court must consider in determining the manner of notice. Rule 3.766(d) provides in pertinent part: "The content of the class notice is subject to court approval. If class members are to be given the right to request exclusion from the class, the notice must include the following: [¶] (1) A brief explanation of the case, including the basic contentions or denials of the parties; [¶] (2) A statement that the court will exclude the member from the class if the member so requests by a specified date; [¶] (3) A procedure for the member to follow in requesting exclusion from the class; [¶] (4) A statement that the judgment, whether favorable or not, will bind all members who do not request exclusion; and [¶] (5) A statement that any member who does not request exclusion may, if the member so desires, enter an appearance through counsel."

The trial court " 'has virtually complete discretion as to the manner of giving notice to class members.' [Citation.]" (*7-Eleven, supra*, 85 Cal.App.4th at p. 1164.) Zobrist does not directly challenge the *manner* in which notice was disseminated, but rather contests the content of the notices. While our review of the manner of giving notice is governed by the abuse of discretion standard, our review of the content of notice may be de novo. " 'To the extent the trial court's ruling is based on assertedly improper criteria or incorrect legal assumptions, we review those questions de novo.' " (*Cho v. Seagate Technology Holdings, Inc.* (2009) 177 Cal.App.4th 734, 745 [99 Cal.Rptr.3d 436], quoting *Hypertouch, Inc. v. Superior Court* (2005) 128 Cal.App.4th 1527, 1537 [27 Cal.Rptr.3d 839] (*Hypertouch*); see also *Wershba, supra*, 91 Cal.App.4th at pp. 234–235.)

The record below reflects that the trial judge carefully reviewed the forms of notice proposed by the parties, and required revisions "with the goal of making it easy to understand for non-lawyers" and to make certain that the notice clearly explained the rights and obligations of class members in connection with the settlement. Zobrist contends that the form of notice provided to class members was nevertheless inadequate because the notices allegedly misled members of the Subscriber Class into believing that they

were "eligible to make claims for any part of the Common Fund," and also because the notices allegedly did not disclose the "size of the class."[17]

She first argues that the statement in the short-form publication notice that the "settlement will provide $21 million into a Common Fund for claims of subscribers who were charged, paid and/or were subject to a flat-rate ETF," misled members of the Subscriber Class into believing that they "could share in a portion of the $21 million." That publication notice, however (as well as the mail notice), directed potential settlement class members to the settlement Web site to learn more about the settlement, and the publication notice specifically referenced the "detailed notice and claim form package" which subscribers would need to submit to "qualify for a payment." The settlement Web site included the " 'Plan of Allocation,' " detailing how payments would be made to class members, including the fact that members of the Subscriber Class were only entitled to the injunctive relief described in the settlement, at three different places linked to on the site's home page: the long-form publication notice (in English and Spanish); the Plan of Allocation of settlement proceedings pleading; and FAQ's (in English and Spanish). The long-form publication notice, for example, states that payments will be made "on a pro rata basis to Class Members who paid an ETF and payment to Class Members that were charged but did not pay an ETF and prove that they suffered economic harm as a result of the ETF." The claim form provided electronically on the Web site and in physical form to class members also made clear that subscribers who were not charged an ETF were not eligible to claim monetary relief. The claim form requires that individuals identify themselves as a customer who "paid a flat [ETF]," or who "was charged but did not pay a flat [ETF]." The form does not include a box that can be checked by past or present subscribers who were or are merely subject to a flat-rate ETF but not charged an ETF. Zobrist does not contest the adequacy of the information provided on the Web site. That the Web site was effective as a primary detailed source of information about the litigation and the settlement is evidenced by the fact that the overwhelming majority of claims filed with the settlement administrator (111,992 out of the total of 154,992) were submitted electronically.

Significantly, Zobrist fails to cite any evidence that any class members were actually deceived or misled by the notice, or that anyone inappropriately submitted a claim for monetary relief as a consequence of confusion or

---

[17] Zobrist also objects that the short-form publication notice failed to disclose to the members of the Subscriber Class that they were members of the class certified in the *Brown* arbitration in New York. The long-form publication notice, however, specifically stated that the settlement would resolve the claims asserted in the *Brown* arbitration: "The settlement will also likely resolve other pending cases that challenge Verizon Wireless's flat[-rate] ETF, including *Brown, Zobrist & Cellco Partnership d/b/a Verizon Wireless*, [AAA], Case Nos. 11 494 01274 05 and 11 494 0032 05, pending before the [AAA] in New York, New York . . . ."

misunderstanding. The notices as a whole, including information provided on the settlement Web site and in the claim form, make clear that monetary relief is limited to members of the ETF Assessed Class.

■ A similar procedure for notice of a class settlement, utilizing a summary notice directing class members to a Web site containing more detailed notice, was approved in *Chavez* as a "perfectly acceptable" manner of giving notice. (*Chavez v. Netflix, Inc., supra*, 162 Cal.App.4th at p. 58.) We agree with the observation in *Chavez* that "[u]sing the capability of the Internet in [this] fashion was a sensible and efficient way of providing notice, especially compared to the alternative [objector] apparently preferred— mailing out a lengthy legalistic document that few class members would have been able to plow through." (*Id.* at p. 58, fn. omitted.) We do not look for perfection. "[A] large body of case law reflect[s] the view that 'the whole concept of a large class-action might easily be stultified by insistence upon perfection in actual notice to class-members . . . .' [Citation.]" (*Hypertouch, supra*, 128 Cal.App.4th at p. 1540.)

Zobrist also argues that notice was defective in failing to disclose the "enormous size" of the class to the EFT Assessed Class. She contends that this did not provide the class members with adequate information for the members to make an informed decision about whether to participate, object, or opt out. She cites no authority for her position that information as to the size of the potential class, or the contingencies of recovery in any particular amount, is required. Courts which have considered such objections in the context of class settlement have rejected the claim.[18] "[T]here is no require- ment that the class size be specified in the notice [citation] . . . ." (*In re Lorazepam & Clorazepate Antitrust Litigation* (D.D.C. 2002) 205 F.R.D. 369, 379; see also *In re Ins. Brokerage Antitrust Litigation* (D.N.J., Feb. 16, 2007, MDL No. 1663, No. 04-5184 (FSH)) 2007 U.S.Dist. Lexis 11163, p. *6 [rejecting objection to notice that it "do[es] not provide details about the size of the class and the actual individual settlement values"]; *Managed Care Litigation Class Plaintiffs v. Aetna Inc.* (S.D.Fla., Oct. 24, 2003, MDL No. 1334, No. 00-1334-MD-Moreno) 2003 U.S.Dist. Lexis 27228, p. *13 [rejecting objection to notice that there was "no way to calculate the actual value of the settlement as to each class member since no estimate of size of class was provided"].)

---

[18] " 'California courts may look to federal authority for guidance on matters involving class action procedures.' [Citations.]" (*Apple Computer, Inc. v. Superior Court* (2005) 126 Cal.App.4th 1253, 1264, fn. 4 [24 Cal.Rptr.3d 818].) "[W]hen there is no relevant California precedent on point [regarding attorney fees in class actions], federal precedent should be consulted. [Citation.]" (*Lealao v. Beneficial California, Inc.* (2000) 82 Cal.App.4th 19, 38 [97 Cal.Rptr.2d 797].)

Both the mail notice and the long-form publication notice identified the total amount of the common fund recovery, the nature of the costs and fees to be deducted from the common fund, and the fact that the balance of the fund would be allocated among qualified class claims. The long-form publication notice makes clear that "[t]he amount paid to Class Members may be larger or smaller than the amount of the claim, depending on how many claims are submitted." "The aggregate amount available to all claimants was specified and the formula for determining one's recovery was given. Nothing more specific is needed. [Citation.]" (*Marshall v. Holiday Magic, Inc.* (9th Cir. 1977) 550 F.2d 1173, 1178.)

■ The trial court did not abuse its discretion in the manner of giving notice and the content of the notices was adequate to " ' "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings." [Citations.]' [Citation.]" (*7-Eleven, supra*, 85 Cal.App.4th at p. 1164.)

C. *Fairness**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

D. *Alleged Breach of Fiduciary Duty and the Incentive Payments*

The court approved incentive awards in the amount of $10,000 each to class representatives White, Schroer, Brown and Nguyen. Zobrist argues that the class representatives breached their fiduciary duties to the class by receiving the incentive awards and that they sought " 'individual gain' " at the expense of the class. She does not dispute the extent of the participation of the class representatives in the litigation, but rather focuses on the disparity between the amount of the awards and the recovery by individual class members. She alleges that Schroer and White received amounts grossly disproportionate to the average recovery of the ETF Assessed Class, and asserts that Nguyen and Brown (members of the Subscriber Class) received "pay-offs to induce them to sell out the Subscriber Class."

■ While there has been scholarly debate about the propriety of individual awards to named plaintiffs, "[i]ncentive *awards* are fairly typical in class action cases." (*Rodriguez v. West Publishing Corp.* (9th Cir. 2009) 563 F.3d 948, 958 (*Rodriguez*), citing 4 Newberg on Class Actions (4th ed. 2002) § 11:38, p. 81, and Eisenberg & Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study* (2006) 53 UCLA L.Rev. 1303.) These awards "are discretionary, [citation], and are intended to compensate class

*See footnote, *ante*, page 1380.

representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." (*Rodriguez*, at pp. 958–959.)

There is a surprising dearth of California authority directly addressing this question. The threshold question of whether a class representative is entitled to a fee in a California class action was recently answered in the affirmative in *Clark v. American Residential Services LLC* (2009) 175 Cal.App.4th 785 [96 Cal.Rptr.3d 441] (*Clark*). (See also *Bell v. Farmers Ins. Exchange* (2004) 115 Cal.App.4th 715, 726 [9 Cal.Rptr.3d 544] [affirming without discussion an order for " 'service payments' to the five named plaintiffs compensating them for their efforts in bringing the action"]; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2010) ¶ 14:146.10, pp. 14-102 to 14-103 (rev. # 1, 2010).) " 'Since without a named plaintiff there can be no class action, such compensation as may be necessary to induce him to participate in the suit could be thought the equivalent of the lawyers' nonlegal but essential case-specific expenses, such as long-distance phone calls, which are reimbursable.' " (*Clark*, at p. 804, fn. omitted, citing *In re Continental Illinois Securities Litigation* (7th Cir. 1992) 962 F.2d 566, 571.) *Clark* involved allegations of unpaid wages and overtime, failure to provide meal and rest periods, and other labor violations. (*Clark*, at p. 789.) The court reversed the trial court's approval of the settlement on the principal ground that "the court did not receive and consider sufficient information on a core legal issue, affecting the strength of the case for plaintiffs on the merits . . . ." (*Id.* at p. 798.) Although approving the concept of incentive awards generally, the court also reversed the trial court's approval of enhancements of $25,000 to each of the two named plaintiffs on the basis that no rationale was provided to show that an award of this sum was fair and reasonable. (*Id.* at pp. 805–806.)

■ "[T]he rationale for making enhancement or incentive awards to named plaintiffs is that they should be compensated for the expense or risk they have incurred in conferring a benefit on other members of the class." (*Clark, supra,* 175 Cal.App.4th at p. 806.) An incentive award is appropriate " 'if it is necessary to induce an individual to participate in the suit[.]' . . . [Citation.]" (*Id.* at p. 804.) "[C]riteria courts may consider in determining whether to make an incentive award include: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof)

enjoyed by the class representative as a result of the litigation. [Citations.]" (*Van Vranken v. Atlantic Richfield Co.* (N.D.Cal. 1995) 901 F.Supp. 294, 299.) These "incentive awards" to class representatives must not be disproportionate to the amount of time and energy expended in pursuit of the lawsuit. (See *Dornberger v. Metropolitan Life Ins. Co.* (S.D.N.Y. 2001) 203 F.R.D. 118, 124–125.)

The court here received evidence that each of the class representatives actively participated in the litigation and worked with class counsel to assist in the prosecution of the litigation. White "produced documents, answered interrogatories and submitted to a deposition. [S]he testified at trial as a witness for plaintiffs. She also traveled across the country from her home in Portland, Oregon to testify at the June 12, 2008 hearing" before the FCC regarding ETF's. Schroer, a claimant in the *Brown* arbitration, "produced documents, answered interrogatories, submitted to a deposition and participated in conferences with counsel to prepare for trial and to discuss trial strategy for the *Brown* matter." Schroer also "personally attended three days of evidentiary hearings in the *Brown* matter, flew across the country from his home in New York to testify at trial in California as a witness for plaintiffs in the *White* action, and traveled to Washington, D.C. to testify before the FCC at the June 12, 2008 public hearing regarding . . . ETF's." Brown, also a claimant in the *Brown* arbitration, "produced documents, answered interrogatories and traveled from Florida to New York City to give deposition testimony in the *Brown* matter. Brown also participated in conferences with counsel to prepare for trial and to discuss trial strategy for the *Brown* matter." Nguyen "produced documents, answered interrogatories and gave deposition testimony." Counsel noted that Nguyen's willingness to participate in a deposition was "significant because she cleans houses for a living."

In contrast to the more detailed analysis given by the trial court to other aspects of the settlement, the discussion of the incentive awards was sparse. There is no " 'presumption of fairness' " in review of an incentive fee award. (*Clark, supra,* 175 Cal.App.4th at p. 806.) The court, however, found the awards justified in light of the total settlement on the "substantial benefit/common fund approach" and the "material support" provided by the named plaintiffs to the prosecution of the case. Given the familiarity of the trial court with the history of the lengthy litigation and the evidence before the court that the representatives had, over the course of the litigation, assisted with investigation, responded to discovery requests, reviewed documents and pleadings, and testified either in deposition or at trial, we find no abuse of discretion in these awards.

### III. Disposition

The judgment is affirmed.

Jones, P. J., and Needham, J., concurred.

On July 27, 2010, the opinion was modified to read as printed above.