Filed 5/8/15  Flannery v. McCormick & Schmick's Seafood Restaurants v. Davis CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| DANIEL FLANNERY,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>MCCORMICK & SCHMICK'S SEAFOOD RESTAURANTS, INC.,<br><br>  Defendant and Respondent;<br><br>JOHN W. DAVIS,<br><br>  Objector and Appellant. | B257450<br><br>(Los Angeles County<br>Super. Ct. No. BC487942)<br><br>**ORDER MODIFYING OPINION**<br>[No change in judgment] |

THE COURT:


GOOD CAUSE appearing, the opinion filed April 29, 2015, in the above entitled matter is hereby modified as follows:

On page 1 in the counsel listing, delete "C. Benjamin Nutley for Plaintiff and Respondent." and replace it with "C. Benjamin Nutley for Appellant and Objector."

On page 1 in the counsel listing, delete "Lawyers for Justice, PC, Edwin and Aiwazian and Arby Aiwazian; Shenkman & Hughes, Kevin I. Shenkman and Mary R. Hughes, for Objector and Appellant." and replace it with "Lawyers for Justice, Edwin

and Aiwazian and Arby Aiwazian; Shenkman & Hughes, Kevin I. Shenkman and Mary R. Hughes, for Plaintiff and Respondent."

There is no change in the judgment.

_____

BIGELOW, P. J.                    RUBIN, J.                    GRIMES, J.

Filed 4/29/15 Flannery v. McCormick & Schmick's Seafood Restaurants CA2/8 (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| DANIEL FLANNERY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MCCORMICK & SCHMICK'S<br>SEAFOOD RESTAURANTS, INC.,<br><br>    Defendant and Respondent;<br><br>JOHN W. DAVIS,<br><br>    Objector and Appellant. | B257450<br><br>(Los Angeles County<br>Super. Ct. No. BC487942) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Kenneth R. Freeman, Judge. Affirmed.

C. Benjamin Nutley for Plaintiff and Respondent.

Lawyers for Justice, PC, Edwin and Aiwazian and Arby Aiwazian; Shenkman & Hughes, Kevin I. Shenkman and Mary R. Hughes, for Objector and Appellant.

_____

## INTRODUCTION

This appeal arises out of objections to trial court approval of the settlement of a class action suit brought by plaintiff and respondent Daniel Flannery against defendant and respondent McCormick & Schmick's Seafood Restaurants, Inc. (McCormick) and its parent company, Landry's, Inc. (Landry's).[1] On appeal, class-member John W. Davis (appellant) contends the notice of the proposed settlement was inadequate to vest the trial court with personal jurisdiction over absent class members. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In July 2012, Flannery individually and on behalf of "all California based consumers who have purchased and/or consumed any menu item that purports to be 'Kobe' beef from a California-based McCormick & Schmick's restaurant within the State of California," filed suit against defendants alleging intentional misrepresentation, negligent misrepresentation, fraud, false advertising in violation of Business and Professions Code section 17500 et seq. and unfair business practices in violation of Business and Professions Code section 17200 et seq. The gravamen of each cause of action was that McCormick misrepresented items on its menu as "Kobe" beef (referred to in the pleadings as the Subject Food Products).

Following mediation in January 2013, respondents reached a settlement agreement, which was eventually memorialized (the proposed settlement agreement). The essential terms of the proposed settlement agreement included changing the menu description of the Subject Food Products to "American Kobe Style" beef and providing a $15 "comp card" to any class member who timely submitted the necessary documentation to the Settlement Administrator. The proposed settlement agreement defined "Defendants" as the McCormick and Landry's. Whereas the complaint defined the class as consumers who purchased the Subject Food Product from McCormick, the

---

[1] McCormick and Landry's, Inc. are referred to collectively as "defendants;" defendants and plaintiff Flannery are referred to collectively as "respondents."

proposed settlement agreement defined the class as consumers who did so from "Defendant's restaurants." ([¶] 13.)[2]  The proposed settlement agreement released defendants and their subsidiaries, etc. from all claims, known and unknown.  ([¶][¶] 47, 48, 49, 50.)

The following class notice requirements were set forth in Paragraph 42 of the proposed settlement agreement:

> **(1)**  Post notice in a prescribed form at the host/hostess station of all restaurants "for ninety (90) calendar days, commencing no later than fourteen (14) calendar days after the date the Court enters the order granting preliminary approval" of the proposed settlement agreement;[3]
>
> **(2)**  Post notice in a prescribed form "as part of a table tent, check presenter or other form of table flyer at each dining room table at all" restaurants;[4]

---

[2]  Paragraph 13 defines class members as "all California based consumers who were exposed to Defendant's online and/or in store menus, and who purchased a Subject Food Product (or any menu item that was advertised to contain 'Kobe' beef on Defendants' online and/or in store menus) at or from a Defendants' restaurant located in the State of California at any time during the Class Period."  This was also the class Flannery sought to have certified.  It appears undisputed that McCormick is just one of several restaurant chains with locations in California that are owned by Landry's, Inc.

[3]  The prescribed form of the host/hostess station notice was:

**<u>NOTICE OF PROPOSED CLSS ACTION SETTLEMENT</u>**
If you purchased menu item containing "Kobe Beef" at a McCormick & Schmick's restaurant in California between July 10, 2008 and July 15, 2012, you may be entitled to receive a $10 or $15 comp card good for the purchase of any food or beverage item at any McCormick & Schmick's restaurant located in the State of California
<u>Your Legal Rights May Be Affected</u>
To obtain more information about the proposed settlement, please visit:
www.kobeclassaction.com

[4]  The prescribed form of the table "tent" was:

**KOBE STYLE KRAVING?**
Try our American Kobe Style Beef Burger –

3

**(3)** The host/hostess station notice and table tent notice were both required to direct customers to a Website which provides customers with specified information about the lawsuit (the Website);

**(4)** The Website "shall remain active and viewable for a period of one hundred twenty (120) calendar days, commencing no later than fourteen (14) calendar days," after the date the Court enters the order granting preliminary approval of the proposed settlement agreement;

**(5)** The Website shall provide viewable and printable copies of the proposed settlement agreement, preliminary approval order, claim forms and notice of the proposed class action settlement.[5]

In July 2013, on Flannery's motion, the trial court approved Flannery as the class representative and granted preliminary approval of the proposed settlement agreement. A Final Fairness Hearing was set for April 17, 2014 and respondents were ordered to publish the notices described above on or before October 4, 2013; all claim and objection forms were ordered to be submitted to the Settlement Administrator on or before February 1, 2014.

---

for just $15.95
Have you enjoyed one of our
Kobe beef menu items
between July 10, 2008 and July 15, 2012?
If you have, you might be eligible for
a Complimentary Dinner card
To find out more about whether you
are eligible for the card, visit www. ____.com

[5] Paragraphs 43, 44 and 45 of the proposed settlement agreement described the "Opt-Out Procedure" for class members who choose to opt out of the settlement agreement. To opt out, class members must electronically complete and submit an opt-out form made available on a specified website on or before the "opt-out deadline." The "opt-out deadline" is defined in paragraph 16 as "forty five (45) calendar days after the date [the restaurant] commence[s] giving notice to the Settlement Class pursuant to paragraph 42, below."

Appellant filed objections to the proposed settlement agreement on February 3, 2014. Among other things, he complained that the definition of the class and the released parties was so overbroad that the notice requirement was insufficient to bind the absent class. Appellant argued that Landry's owns a number of restaurant chains in addition to McCormick (e.g. Morton's Steakhouse) which may have engaged in the same wrongful conduct underlying the claims against McCormick; for this reason, defining the class as consumers who purchased the Subject Food Product at "Defendant's restaurants," and the Released Parties as "Defendants," the absent class would necessarily include customers of all restaurants owned by Landry's, not just customers of McCormick. As such, the notice requirements were inadequate in that they gave notice only to customers of McCormick, and not customers of Landry's other restaurant chains who would be bound by the settlement.

In his opposition and request to strike appellant's objections to the settlement, Flannery countered that the proposed settlement agreement did not release every restaurant owned by Landry's, Inc. because the trial court had previously determined that the lawsuit was a "consumer class action 'brought on behalf of persons who purchased menu items purporting to contain real "Kobe" beef at Defendant's McCormick & Schmick's restaurants.' "

In opposition to Flannery's motion to strike, appellant argued, "If the parties did not intend the class definition and release to apply to customers of Landry's restaurants other than McCormick & Schmick's, the problem could be fixed by minor editing of the class definition and release." He also argued, "The [overbreadth] problem would be eliminated easily by redefining the class to include only McCormick & Schmick's customers, rather than a class definition encompassing all of Landry's other restaurant customers." Appellant raised a second argument for the first time in his opposition to the motion to strike: the fifth cause of action alleged a violation of the Consumers Legal Remedy Act (CLRA) (Civ. Code, §§ 1750 et seq.), but the notice requirements did not comply with the notice requirements of the CLRA as set forth in Civil Code section 1781, subdivision (d).

5

Flannery's motion to approve and appellant's objections were heard on May 6, 2014. The record does not include a Reporter's Transcript of that hearing or a document entitled Statement of Decision. It does include a document entitled "Motion for Final Approval of Class Action Settlement, Motion for Fees, Costs and Incentive Payment," with the words "Final Order" handwritten under that title, which was attached as an exhibit to the final judgment. Without dispute from respondents, appellant refers to this document as a "tentative opinion" issued by the trial court at the May 6th hearing, which the trial court adopted as its "final order" at the conclusion of the hearing (the final order). We accept appellant's characterization.

In the final order, the trial court agreed with appellant that the class definition was overbroad to the extent it included customers of restaurants other than McCormick. But it disagreed that the settlement was overbroad: "[The release] applies to all claims 'which were alleged, or which could have been alleged based on the facts and claims alleged, in the Action.' [Settlement Agreement [¶]47.] Since the release is tethered to 'the Action,' which is specifically based on the sale of the Subject Food Products at McCormick & Schmick's restaurants, [footnote omitted] there is no potential overbreadth problem." Regarding the notice requirements of Civil Code section 1781, subdivision (d), the trial court observed that, because the complaint alleged a violation of the CLRA only as the predicate unlawful business practice for Unfair Competition Law (UCL) cause of action, the notice requirements of the CLRA did not apply.

The judgment granting final approval of the proposed settlement agreement was filed on May 8, 2014 (the judgment). The judgment overruled appellant's objections, "except as to the scope of the class definition." Whereas the proposed settlement agreement defined the class as customers at "Defendant's restaurant[s] . . . ," the judgment limited the class to customers at "Defendants' McCormick & Schmick's restaurants only."

Appellant timely appealed.

6

**DISCUSSION**

Appellant contends that notice to absent class members was constitutionally defective. He makes two arguments. First, that "summary notices at [McCormick] restaurants over a 90-day period, with the full notice available only on a dedicated internet website, was not adequately directed at a class comprising restaurant patrons over a four-year period." Second, that the notice requirements did not comply with the Civil Code section 1781, subdivision (d) of the CLRA. We find no error.

**1.      Standard of Review**

In a class action lawsuit, the trial court has broad discretion to determine whether notice to the class was proper and appellate review of the issue is limited to a determination of whether there was a clear abuse of that discretion. (*Cellphone Termination Fee Cases* (2010) 186 Cal.App.4th 1380, 1389 (*Cellphone*).) While the trial court has "virtually complete discretion" as to the manner of giving notice, the content of such notice is subject to de novo review. (*Id.* at p. 1390.)

**2.      The Notice Satisfied Due Process**

Before a class action lawsuit can be settled, procedural due process requires that class members be fairly apprised of the terms of the proposed compromise and the options open to dissenting members of the class. (*Litwin v. iRenew Bio Energy Solutions, LLC* (2014) 226 Cal.App.4th 877, 883.) The same rules apply to a representative action under the UCL. (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 977.)

Trial court management of class actions is governed by California Rules of Court, rule 3.760 et seq. Trial courts have discretion to grant relief from compliance with the rules in an appropriate case. (Cal. Rules of Court, rule 3.740(b).) Rules for the manner of giving notice are set forth in rule 3.766(e) and (f):

> "(e) In determining the manner of the notice, the court must consider:  [¶]  (1) The interests of the class;  [¶]  (2) The type of relief requested;  [¶]  (3) The stake of the individual class members;  [¶]  (4) The cost of notifying class members;  [¶]  (5)

7

The resources of the parties; [¶] (6) The possible prejudice to class members who do not receive notice; and [¶] (7) The res judicata effect on class members."

"(f) If personal notification is unreasonably expensive or the stake of individual class members is insubstantial, or if it appears that all members of the class cannot be notified personally, *the court may order a means of notice reasonably calculated to apprise the class members of the pendency of the action*--for example, publication in a newspaper or magazine; broadcasting on television, radio, or the Internet; or posting or distribution through a trade or professional association, union, or public interest group." (Italics added.)

In *Cooper v. American Sav. & Loan Assn.* (1976) 55 Cal.App.3d 274, 285, the court observed that, when membership of the class is large, damages are minimal, and problems such as whether to opt out or intervene are insignificant, personal notice to each class member is not required and notice by publication is adequate. More recently, courts have recognized using the capability of the internet to provide notice in a class action lawsuit as a "sensible and efficient way of providing notice, especially compared to . . . mailing out a lengthy legalistic document that few class members would have been able to plow through." (*Cellphone, supra,* 186 Cal.App.4th at p. 1392, citing *Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 58.) The *Cellphone* and *Chavez* courts also approved a two-step process of summary notice directing class members to a Web site containing more detailed notice.

In *Chavez*, for example, the gravamen of plaintiff's claims was that Netflix had falsely advertised that it would send customers "unlimited" DVD rentals with "1 Day Delivery" for a flat fee. The class was comprised of current and former Netflix subscribers. Netflix agreed to settle the action by providing one month of free DVD rentals to class members who claimed the benefit. (*Chavez, supra,* 162 Cal.App.4th at p. 46.) Notice to the class was to be in two steps. First, potential class members would be sent an e-mail (at the last e-mail address Netflix used to communicate with them)

8

summarizing the terms of the settlement and their rights to make claims, opt out or object, and the deadlines for doing so. Second, the summary email would refer to a settlement Website that would contain a more detailed settlement notice, the claim form, the settlement agreement itself, a list of frequently asked questions, and a list of important deadlines. Follow-up mail notice would be sent to anyone whose e-mail addresses came back as undeliverable. (*Id.* at pp. 48-49.) The appellate court approved this process, holding: "Using a summary notice that directed the class member wanting more information to a Web site containing a more detailed notice, and provided hyperlinks to that Web site, was a perfectly acceptable manner of giving notice in this case. [Citation.]" (*Id.* at p. 58.)

*Cellphone* was a consolidated appeal of several class actions challenging imposition of early termination fees by wireless carriers. The settlement agreement provided for notice to class members in the following manner: (1) by mail to the last known address of persons who had been assessed an early termination fee; (2) a one-page short-form publication notice for publication in print media; and (3) a more detailed long-form publication notice for posting on an internet referral site. (186 Cal.App.4th. at p. 1392.) Like the *Chavez* court, the *Cellphone* court approved the procedure of using a summary notice directing class members to a Website containing more detailed notice. (*Id.* at p. 1392.)

Here, as in *Chavez* and *Cellphone*, the notice involved a two-step notice process: First, for 90 days McCormick would post a summary notice at the host/hostess desk informing customers of a proposed settlement of a class action against McCormick, that they may be entitled to compensation if they purchased a menu item containing "Kobe beef" during the qualifying period and directing them to a website for further information; the fact that customers may be eligible for compensation and the website information would be repeated in a card at the table. Second, the website would contain a detailed settlement notice, the claim and opt-out forms, and the important deadlines. Under the circumstances of this case, we find no abuse of discretion in the trial court's

conclusion that this manner of notice was reasonably calculated to apprise the class members of the pendency of the action as required by rule 3.766(e) and (f).

In the absence of a Reporter's Transcript of the May 6th hearing, we find no merit in appellant's argument that the trial court abused its discretion because there was no evidence that class members were likely to revisit a McCormick during the 90 days that the summary notice would be posted at the host/hostess desk. (See *Hodges v. Mark* (1996) 49 Cal.App.4th 651, 657 [omission of Reporter's Transcript precludes appellant from raising any evidentiary issues on appeal].) Appellant's argument that the trial court abused its discretion because appellant introduced evidence that defendants could have posted notice on their own websites and communicated directly with customers by email, fails for the same reason.

Appellant's reliance on *Pillsbury v. South Coast Regional Com.* (1977) 71 Cal.App.3d 740, 753, for a contrary result is misplaced. At issue in that case was compliance with "written public notice" provisions in the California Administrative Code which required posting notice at a conspicuous place on the site of the proposed development. The case did not involve class action notice.

### 3.    Civil Code section 1781, subdivision (d) Does Not Apply

We find no merit in appellant's argument that notice was inadequate because it did not comply with the Civil Code section 1781, subdivision (d) of the CLRA, which reads:

> "If the action is permitted as a class action, the court may direct either party to notify each member of the class of the action. The party required to serve notice may, with the consent of the court, if personal notification is unreasonably expensive or it appears that all members of the class cannot be notified personally, give notice as prescribed herein by publication in accordance with Section 6064 of the Government Code in a newspaper of general circulation in the county in which the transaction occurred."

Publication of notice pursuant to section 6064 of the Government Code requires publication once a week for four successive weeks "in a newspaper regularly published once a week or oftener . . . ."

10

As the trial court noted, the complaint did not allege any causes of action under the CLRA. The fifth cause of action was brought under the UCL (Bus. & Prof. Code, §§ 17200, et seq.), not the CLRA. The UCL, which proscribes "any unlawful" business practice, is independent of other laws. (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180.) But the UCL "borrows" violations of other laws and treats them as unlawful practices that are independently actionable under the UCL. (*Id*. at p. 180 [practices that are not unlawful may nevertheless be deemed unfair or deceptive under the UCL]; *Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 676 [UCL borrows violations of other laws and treats these violations as unlawful business practices under the UCL].) Virtually any local, state or federal law can serve as a predicate for an action under the UCL, including misrepresentations in the sale of goods in violation of the CLRA. (See *Hale v. Sharp Healthcare* (2010) 183 Cal.App.4th 1373, 1383 (*Hale*).)

Appellant has cited no authority, and our independent research has found none, to suggest that, when a UCL cause of action is predicted on violation of the CLRA, the procedures of the CLRA become applicable to that UCL cause of action. In fact, the law is to the contrary. For example, the UCL generally limits a private party's available remedies to injunctions and restitution; other monetary damages, including punitive damages, are not available. (*Clark v. Superior Court* (2010) 50 Cal.4th 605, 606, 610, 612, 614; Bus. & Prof. Code, § 17203.) By contrast, a private party in a CLRA action may recover actual damages and punitive damages, in addition to an injunction and restitution. (*Clark* at p. 611, fn. 3; Civ. Code, § 1780, subd. (a).) A private party is not entitled to damages on a UCL cause of action that is predicated on a violation of the CLRA. (Cf. *People ex rel. City of Santa Monica v. Gabriel* (2010) 186 Cal.App.4th 882, 891 (*City of Santa Monica*) [UCL borrows violations from other laws by making them independently actionable under the UCL, but it does not borrow remedies from those laws].) In *City of Santa Monica*, the court held, "The UCL does not authorize an award of attorney fees. No exception exists for UCL actions predicated on a statute that authorizes such an award." (*Id*. at pp. 891-892.)

11

Here, the fifth cause of action for violation of the UCL was predicated upon a violation of the CLRA. This, however, does not make the notice requirements of the CLRA applicable to the UCL action any more than it makes the remedies available in a CLRA action available in a UCL action.

## DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.


RUBIN, J.

WE CONCUR:


BIGELOW, P. J.


GRIMES, J.