Filed 10/29/14; pub. & mod. order 11/21/14 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MARK LAFFITTE et al., | B249253 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC321317) |
| v. | |
| ROBERT HALF INTERNATIONAL INC. et al., | |
| Defendants and Respondents, | |
| DAVID BRENNAN, | |
| Plaintiff and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mary Strobel, Judge.  Affirmed.

Law Office of Lawrence W. Schonbrun and Lawrence W. Schonbrun for Plaintiff and Appellant.

Law Offices of Kevin T. Barnes, Kevin T. Barnes and Gregg Lander for Plaintiffs and Respondents.

Paul Hastings, Judith M. Kline and M. Kirby C. Wilcox for Defendants and Respondents.

_____

# INTRODUCTION

Plaintiff Mark Laffitte, on behalf of himself and other class members, settled a class action lawsuit against defendants Robert Half International Inc., Robert Half of California, Inc., Robert Half Incorporated, and Robert Half Corporation doing business as RHC (collectively Robert Half or the Robert Half defendants) for $19 million. David Brennan, a member of the class, objected to the settlement. The trial court overruled his objections and approved the settlement, which included an award of attorneys' fees to class counsel of one-third of the settlement, or approximately $6.3 million. Brennan appeals from the order approving the settlement and entering final judgment, challenging both the class action settlement notice regarding the award of attorneys' fees and the amount of attorneys' fees awarded. Laffitte asks that we affirm the trial court's order. The Robert Half defendants state that the attorneys' fees issue does not affect them directly because class counsel will receive their fees from the common fund the Robert Half defendants agreed to pay to settle the case, but they ask that we affirm the order "in order to bring this lawsuit to closure." We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

On September 10, 2004 Laffitte filed a wage and hour class action suit against Robert Half. The complaint alleged five causes of action based on violations of the Labor Code: misclassification of staffing professionals as exempt and failure to pay statutorily mandated wages, failure to provide adequate meal periods (premium wages), failure to provide rest periods, failure to furnish timely and accurate wage statements, and "waiting time" penalties. The complaint also alleged unfair business practices in violation of Business and Professions Code section 17200 et seq.

On March 13, 2006 the trial court denied Robert Half's motion for summary judgment or in the alternative for summary adjudication. On September 18, 2006 the court denied Robert Half's motion to strike the class allegations, and granted Laffitte's

2

motion for class certification with respect to the wage, wage statements, waiting time, and unfair business practices causes of action. The court denied Robert Half's subsequent motion for reconsideration of the class certification order.

The parties participated in a mediation. After a second session of the mediation on June 18, 2012 Laffitte and the class representatives in two other class actions against Robert Half involving similar claims and allegations reached a settlement of the three class actions.[1]

On September 5, 2012 the class representatives filed a joint motion for conditional certification of the class and preliminary approval of the settlement. The trial court, after relating the three class actions, granted the motion, conditionally certified the class, and preliminarily approved the settlement. The court also approved the proposed class notice and related materials, appointed a settlement administrator, and scheduled a hearing for final approval on October 19, 2012.

On November 13, 2012 the trial court granted the parties' ex parte application for an order amending the settlement agreement, class notice, and claim form. Among other things, the amended settlement agreement provided that Robert Half would pay a gross settlement amount of $19,000,000. Subject to court approval, the settlement agreement provided that the following payments would be made from the gross settlement amount: class counsel attorneys' fees of not more than $6,333,333.33 (33.33 percent of the gross settlement amount) and costs not to exceed counsel's actual costs, class representative payments not to exceed $80,000, settlement administrator fees not to exceed $79,000, civil penalties owed to the California Labor and Workforce Development Agency, and applicable payroll taxes on the employees' recovery. The amended settlement agreement

---

[1]    The two other class actions were *Williamson v. Robert Half International Inc.* (Super. Ct. L.A. County, 2013, No. BC377930) and *Apolinario v. Robert Half International Inc.* (Super. Ct. L.A. County, 2013, No. BC455499).

also included a "clear sailing" provision stating that class counsel would apply for their attorneys' fees "and Robert Half will not oppose their request."**2**

On January 28, 2013 Brennan objected to the proposed settlement. Relying in part on rule 23 of the Federal Rules of Civil Procedure, Brennan made the following objections: (1) the attorneys' fee request was excessive; (2) "[m]oney to charity should not be a part of the Court's attorneys' fee award calculation"; (3) information necessary for class members to intelligently object to or comment on the proposed settlement was missing from the notice and the pleadings; (4) the clear sailing provision warranted the appointment of a class guardian; (5) the notice to the class was deceptive regarding the responsibility for payment of attorneys' fees; (6) class counsel and counsel for Robert Half had not filed a report, as required by the amended settlement agreement; (7) the notice did not disclose that unclaimed funds would be donated to a charity of the Robert Half defendants' choice; and (8) certain other provisions of the settlement were improper.

On February 28, 2013 the class representatives and Robert Half filed a joint motion for final approval of the class action settlement and a response to Brennan's objections. The class representatives reported that they had sent class notices to 3,996 class members and had received only two objections: an objection from Brennan and an "objection" that was actually a dispute over the amount the individual class member was to receive. The class representatives also filed a motion for attorneys' fees, costs, and class representative enhancements. The motion requested $6,333,333.33 in attorneys' fees for class counsel, $127,304.08 in costs, $79,000 in settlement administrator expenses, and $80,000 in class representative enhancement payments. The class representatives explained that class counsel were requesting as attorneys' fees one-third

---

**2** Clear sailing provisions "allow counsel for the plaintiff class (class counsel) to seek an award of attorney fees from the trial court, with the assurance that defendant will not oppose the fee application if the amount sought is less than or equal to a specified dollar amount." (*Ruiz v. California State Automobile Assn. Inter-Insurance Bureau* (2013) 222 Cal.App.4th 596, 598; see *Concepcion v. Amscan Holdings, Inc.* (2014) 223 Cal.App.4th 1309, 1323, fn. 7.)

4

of the gross settlement, which constituted a common fund for the benefit of class members, and argued that this amount was reasonable and appropriate. Class counsel asserted that their hourly rates and number of hours worked were fair and reasonable and that the successful result, the difficulty of the issues in the case, the quality of their representation, the contingency risk, and the preclusion of other employment justified a lodestar multiplier.

In support of their motion for attorneys' fees, class counsel submitted declarations from the attorneys in each of the three law firms serving as class counsel. The attorneys did not submit detailed time records. The declarations stated that Kevin T. Barnes, who served as lead counsel supervised and handled all aspects of the litigation, worked 2,259.5 hours on the case at an hourly rate of $750, and his partner, Gregg Lander, worked 807.3 hours at an hourly rate of $600. Joseph Antonelli worked 709.3 hours on the case at an hourly rate of $750, and his partner, Janelle Carney, worked 14.4 hours at an hourly rate of $600. Finally, Mika Hilaire worked 423 hours on the case at her hourly rate of $500. Barnes determined that class counsel worked a total of 4,263.5 hours on the case (and anticipated working 200 hours on the appeal) and, using the hourly rate for each attorney, calculated that the total lodestar amount was $2,968,620 ($3,118,620 including the appeal). Class counsel requested a lodestar multiplier of between 2.03 to 2.13 for a total requested attorneys' fee award of $6,333,333.33.

Barnes also described the contentious nature of the litigation and summarized the work class counsel had performed: "The settlement that has been reached is the product of tremendous effort, and a great deal of expense by the parties and their counsel. The parties' assessment of the matter is based on one of the most heavily litigated cases I have ever been a part of and the extensive research and litigation for the past 8 ½ years. This litigation included extensive written discovery, extensive law and motion practice, 68 depositions, three Motions for Summary Judgment, a Class Certification Motion, subsequent Reconsideration Motion and then another Motion to Decertify, numerous experts, consultation with an economist regarding potential damage exposure and two full day mediations."

5

On March 22, 2013 the trial court held a hearing on the motion for approval of the settlement and the motion for attorneys' fees. The court stated in a tentative ruling that the requested fee amount "amounts to 33 1/3[] percent of the gross settlement amount, and is not an atypical contingency agreement in a class action. The primary factor for determining whether an attorney fee award is fair is whether the fee bears a reasonable relationship to the value of the attorney's work." The court stated that the 4,263.5 attorney hours spent by class counsel litigating this action "is a fairly reasonable number of hours to have billed on a class action matter that was heavily litigated for 8.5 years . . . ." The court noted that "Class Counsel billed $2,968,620 on this amount of time, based on hourly rates of $750/hour for Barnes and Antonelli, $600/hour for Lander and Carney, and $500/hour for Hilaire. . . . This rate is justified by the high level of Class Counsel's experience in litigating wage and hour claims/class actions." The court stated that, "[b]ased on the reasonable number of hours billed and the legitimate hourly rate, Class Counsel's lodestar is $2,968,620." The court acknowledged Brennan's objections to the proposed settlement but stated that rule 3.769 of the California Rules of Court, not rule 23 of the Federal Rules of Civil Procedure, governed the requirements of a class action settlement notice. The court stated that "[t]he Parties' method of calculation of attorneys' fees is supported under California law. The court in *Lealao v. Beneficial California Inc.* (2000) 82 Cal.App.4th 19, 27 approved of the use of a common fund whereby attorneys' fees are calculated as a percentage of the amount recovered."

During the hearing the court found that the class action notice "that was given fully complies with California law, with due process and is not misleading." The court also found that "the tasks that were performed by class counsel and the number of hours that they spent on those tasks were reasonable and that . . . [t]he hourly fees, if you're looking at lodestar, are within the range of what is reasonable for this type of work in this community." Nevertheless, the court also asked for further briefing on (1) "how the attorneys' fees are to be allocated" among the three law firms serving as class counsel "and whether named Plaintiffs have signed a fee sharing agreement"; (2) "the amount that is [in] controversy and how it is calculated, estimates as to realistic ranges of

6

outcomes" if the case were to go to trial, "and why the risks of litigation make the settlement fair, reasonable and adequate"; and (3) support for a multiplier of two on "the lodestar figure." The court noted that some of the statements in Barnes' declaration were "a bit conclusory," asked for further explanation about class counsel's statement that the case involved "novel and complex legal issues," and "asked for further briefing on the reasonable range of expected outcomes versus the settlement amount . . . ."

Barnes subsequently submitted an 18-page supplemental declaration responding to the court's questions and providing additional information regarding the work class counsel had performed during the eight and one-half years of the litigation. Barnes calculated, based on the average number of hours per week and the number of workweeks of the class members, that "the total amount in controversy in the *Laffitte* class is approximately $90,690,000 and the total amount in controversy in the *Apolinario* class is approximately $25,800.000." Barnes stated, however, "there were numerous risks in both cases related to both class certification and the merits," including loss of class certification in *Laffitte*, changes in the law "as to certification in exempt misclassification cases (making it much harder today to obtain and/or maintain class certification)," the United States Supreme Court's recent decision in *Wal-Mart Stores, Inc. v. Dukes* (June 20, 2011, No. 10-277) ___ U.S. ___ [131 S.Ct. 2541, 180 L.Ed.2d 374], and California Supreme Court's decision in *Harris v. Superior Court* (2011) 53 Cal.4th 170 and decision to grant review in *Duran v. U.S. Bank National Assn.* (2012) 203 Cal.App.4th 212, review granted May 16, 2012 and affirmed by *Duran v. U.S. Bank National Assn.* (2014) 59 Cal.4th 1. Barnes stated that, after applying a 70 percent class certification risk factor for the *Laffitte* class action and a 25 percent class certification risk factor for the *Apolinario* class action, and a 50 percent merits risk factor for both, "the total settlement exposure for the class claims is approximately $34,966,500,"[3] so that the

---

[3] Using the "70 [percent] chance of maintaining class certification in *Laffitte*" and "25 [percent] chance of obtaining class certification in *Apolinario*," class counsel calculated that the value of the two class actions was $69,933,000 ($63,483,000 + $6,450,000). Class counsel then reduced this figure by a "50 [percent] chance of

7

$19,000,000 settlement represented "54[] percent of the value of the total claim, which Plaintiffs believe is outstanding considering the risk of prevailing on class certification, prevailing on the merits, and maintaining any part of Plaintiffs' victory through appeal."[4] Barnes also provided further information and argument in support of a multiplier. Barnes concluded that "[a]ll this hard work and determination resulted in the settlement of $19,000,000. . . . [T]he average Class Member award is over $4,300 and the highest award is over $48,000 [citation]. . . . [¶] . . . The risks of this class action case were enormous. Litigating this wage and hour class action . . . took between 4,263.5 and 4,463.5 attorney hours and involved litigation costs of $127,304.08 . . . ."

The trial court held another hearing on Brennan's objections on April 10, 2013. The trial court overruled Brennan's objections and concluded that it had "sufficient information at this point to determine that this is a fair and reasonable settlement." The court stated that "[t]he supplemental declaration from Mr. Barnes has addressed the court's question about how the attorneys fees are to be allocated between the firms representing plaintiffs, whether the named plaintiffs have signed a fee sharing agreement, and addressed the requirement under the California Rules of Court that the terms of any attorneys fees agreement be set forth in full." The court also stated that it "received sufficient information to evaluate the strength of plaintiffs' case, detailed information about the factual and legal risks involved, the valuation on a claim by claim basis and the discount factor that plaintiff[s] applied in coming up with a reasonable range of outcomes." The court further acknowledged receipt of "significant information on the risk, expense, complexity and likely duration of further litigation; the risk of maintaining

---

prevailing on the merits," giving a total value of $34,966,500. Class counsel valued the *Williamson* class action at $0 because they "felt that there was virtually no chance of prevailing at the time of class certification and/or the merits" of that case.

[4] Actually, the $19,000,000 settlement represented approximately 16 percent (excluding any appellate risk) of the value of the total claim of $116,490,000 ($90,690,000 for *Laffitte* + $25,800,000 for *Apolinario*), because class counsel had already discounted the total value of the claim for the risk of prevailing on class certification and the merits.

8

a class action status throughout trial; the extent of discovery completed; the experience and views of counsel; and the views of the class members." The court found that "[t]hese three actions have a lengthy procedural history including one class certification, a motion to decertify in another case, a class certification not yet having been granted, [and] the uncertainties introduced by case law in this area . . . throwing into significant doubt the maintenance of the certification . . . ."

Turning to the amount of attorneys' fees, the court stated it "considers in this case that there is a contingency case, and so I do a double check on the attorneys fees by looking at the lodestar amount. I do believe I have sufficient information on the number of hours that were present and that the hourly rates charged therefore were within the norm and not overstated. Given the lodestar, I then also find I have information in the record which supports the multiplier that would be applied to lodestar if you're looking at a strict lodestar calculation, which we're not, we're looking at a contingency calculation, the amount of the contingency is not unreasonable. I'm considering the novelty and difficulty of the questions involved, the skill displayed in presenting them, the extent to which the litigation precluded other employment by the attorneys and the inherent risk whenever there is a fee award that is contingent. On that basis, I am granting final approval." The trial court granted final approval of class action settlement and awarded $6,333,333.33 in attorneys' fees, $127,304.08 in costs, $79,000 in settlement administrator expenses, and $80,000 in class representative enhancement payments.

Laffitte served a notice of ruling on the parties on April 12, 2013. Brennan timely filed a notice of appeal on June 10, 2013.

**DISCUSSION**

Brennan argues that the notice to the class members denied them due process because the nature and timing of the settlement approval procedure set forth in the notice was unfair, and because the language in the notice describing a class member's financial responsibility for attorneys' fees was misleading. Brennan also argues that, in reviewing

9

the class counsel's request for attorneys' fees, the trial court erred by using the percentage of fund method and then made mistakes when performing lodestar calculations. Finally, Brennan contends that class counsel breached their fiduciary duty to the class members by including a collusive clear sailing provision in the amended settlement agreement.

> A.   *The Class Notice Did Not Violate the Class Members' Due Process Rights*
> 1.   Timing of Objections

The class notice describing the preliminarily-approved settlement included the proposed attorneys' fees award for class counsel, a schedule for final approval, and the procedure for making objections. The notice stated: "Class Counsel, consisting of Law Offices of Kevin T. Barnes, Law Office of Joseph Antonelli, and Appell | Hilaire | Benardo LLP, will seek approval from the Court for the payment in an amount not more than $6,333,333.33 for their attorneys' fees in connection with their work in the Actions, and an amount not more than $200,000 in reimbursement of their actual litigation expenses that were advanced in connection with the Actions. Class Counsel's attorneys' fees and litigation expenses as approved by the Court will be paid out of the Gross Settlement Amount." The trial court did not require class counsel to file, and they did not file, their motion for attorneys' fees until February 28, 2013, which was after the January 28, 2013 deadline stated in the notice for class members to file their objections.

Brennan argues that requiring class members to file objections to the proposed settlement and request for attorneys' fees before class counsel filed their motion for attorneys' fees was a violation of due process and a breach of fiduciary duty. Brennan asserts that the statement in the notice that class counsel would request not more than $6,333,333.33 did not give the class members sufficient information to evaluate whether to object to the request. In support of his contention Brennan relies on Federal Rules of

10

Civil Procedure, rules 23 (rule 23) and 54 (rule 54) (28 U.S.C.),[5] and the Ninth Circuit's opinion in *In re Mercury Interactive Corp. Securities Litigation* (9th Cir. 2010) 618 F.3d 988, 993-995.

Under rule 23 class counsel must file a motion for attorneys' fees prior to the time class members must file objections to the settlement (rule 23(h)(1)-(4)), and the motion must include not only the settlement agreement's provisions but also the actual amount sought or a "fair estimate" (rule 54(d)(2)(B)(iii)). In *Mercury* the Ninth Circuit, interpreting rule 23(h), held that, with respect to the timing of a motion for attorneys' fees, "a schedule that requires objections to be filed before the fee motion itself is filed denies the class the full and fair opportunity to examine and oppose the motion that Rule 23(h) contemplates." (*In re Mercury Interactive Corp. Securities Litigation*, *supra*, 618 F.3d at p. 995.)

Rule 23 does not control in California. "As a general rule, California courts are not bound by the federal rules of procedure but may look to them and to the federal cases

---

[5]   Rule 23(h) provides: "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply: [¶] (1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner. [¶] (2) A class member, or a party from whom payment is sought, may object to the motion. [¶] (3) The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a). [¶] (4) The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D)."
       Rule 54(d)(2) provides in part: "Costs; Attorney's Fees. [¶] . . . [¶] (2) *Attorney's Fees*. [¶] (A) Claim to Be by Motion. A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages. [¶] (B) Timing and Contents of the Motion. Unless a statute or a court order provides otherwise, the motion must: [¶] (i) be filed no later than 14 days after the entry of judgment; [¶] (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award; [¶] (iii) state the amount sought or provide a fair estimate of it; and [¶] (iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made."

11

interpreting them for guidance or where California precedent is lacking. [Citations.] California courts have never adopted Rule 23 as 'a procedural strait jacket. To the contrary, trial courts [are] urged to exercise pragmatism and flexibility in dealing with class actions.' [Citations.]" (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 239-240; see *Cartt v. Superior Court* (1975) 50 Cal.App.3d 960, 970, fn. 16 ["[w]e note the obvious: Rule 23, as such, does not bind California courts"].) California courts follow the federal rules for class action only in the absence of controlling state authority and only "look to Rule 23 for guidance where California precedent is lacking." (*Los Angeles Gay & Lesbian Center v. Superior Court* (2011) 194 Cal.App.4th 288, 301, fn. 7; see *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1118 ["in the absence of controlling state authority, California courts should utilize the procedures of rule 23"]; *La Sala v. American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 872 ["trial courts, in the absence of controlling California authority, [should] utilize the class action procedures of the federal rules"].)[6]

California precedent and authority governing court approval of class action settlements and attorneys' fees applications, however, are not lacking. Rule 3.769 of the California Rules of Court states the procedure for including an attorneys' fees provision in a class action settlement agreement and for giving notice of the final approval hearing on the proposed settlement. Under rule 3.769(b) of the California Rules of Court, "[a]ny agreement, express or implied, that has been entered into with respect to the payment of attorney's fees or the submission of an application for the approval of attorney's fees must be set forth in full in any application for approval of the dismissal or settlement of an action that has been certified as a class action." This rule "protect[s] class members from potential conflicts of interest with their attorneys by requiring the full disclosure of

---

[6] The cases cited by Brennan contain similar statements. (See, e.g., *Lealao v. Beneficial California, Inc.*, *supra*, 82 Cal.App.4th at p. 38 ["when there is no relevant California precedent on point, federal precedent should be consulted"]; *Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1801, fn. 7 ["[i]n the absence of California law on the subject, California courts look to federal authority"].)

all fee agreements in any application for dismissal or settlement of a class action." (*Mark v. Spencer* (2008) 166 Cal.App.4th 219, 223.) "Under the California Rules of Court governing class actions, 'notice of the final approval hearing must be given to the class members in the manner specified by the court. The notice must contain an explanation of the proposed settlement and procedures for class members to follow in filing written objections to it and in arranging to appear at the settlement hearing and state any objections to the proposed settlement.' (Cal. Rules of Court, rule 3.769(f).)" (*Litwin v. iRenew Bio Energy Solutions, LLC* (2014) 226 Cal.App.4th 877, 883; accord, *Cellphone Termination Fee Cases* (2010) 186 Cal.App.4th 1380, 1390.)

The notice given to the class members complied with California Rules of Court rule 3.769 by apprising them of the agreement concerning attorneys' fees. The notice told the class members that class counsel could receive up to $6.3 million in attorneys' fees. The notice also advised the class members of the procedures for objecting to the proposed settlement and appearing at the settlement hearing, where they could present their objections to any aspect of the settlement, including the amount of attorneys' fees to be awarded to class counsel. Such objections could include an objection to the amount of information available regarding class counsel's attorneys' fees and, if appropriate, a continuance of the hearing to obtain more information (which is exactly what Brennan did). (See Cal. Rules of Court, rule 3.769(f); *Litwin v. iRenew Bio Energy Solutions, LLC*, *supra*, 226 Cal.App.4th at p. 883 ["[p]rocedural due process requires that affected parties be provided with 'the right to be heard at a meaningful time and in a meaningful manner'"]; *In re Vitamin Cases* (2003) 107 Cal.App.4th 820, 829 ["[t]he primary purpose of procedural due process is to provide affected parties with the right to be heard at a meaningful time and in a meaningful manner," but "[i]t does not guarantee any particular procedure but is rather an 'elusive concept,' requiring only '"notice reasonably calculated to apprise interested parties of the pendency of the action affecting their property interest and an opportunity to present their objections"'"].) The notice in this case "'"fairly apprise[d] the class members of the terms of the proposed compromise and of the options open to dissenting class members."'" [Citation.]" (*Cho v. Seagate Technology Holdings,*

13

*Inc.* (2009) 177 Cal.App.4th 734, 746.) The notice did not violate the class members' due process rights.

2.      Responsibility for Attorneys' Fees

The notice of settlement states: "The Court will also be asked to approve Class Counsel's request for attorneys' fees and costs and the class representative payments. A Class Member who does not request exclusion from the settlement may, but is not required to, enter an appearance through counsel. *As a Class Member, you will not be responsible for the payment of attorneys' fees . . . unless you retain your own counsel, in which event you will be responsible for your own attorneys' fees and costs.*" (Italics added.) Brennan argues that the statement "you will not be responsible for . . . attorneys' fees" is deceptive and misleading because class counsel were to receive their attorneys' fees from the common fund and each class member is economically responsible for his or her share of the attorneys' fees award out of the gross settlement amount. Brennan also argues that the phrase "you will be responsible for your own attorney's fees" is "(1) wrong as a matter of law; and (2) had the effect of discouraging class members from seeking the assistance of their own counsel."

When the "settlement agreement is read in its entirety and placed into context" *Owens v. County of Los Angeles* (2013) 220 Cal.App.4th 107, 119), the meanings of these phrases are straightforward and not misleading. (See *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2003) 107 Cal.App.4th 516, 527 [phrase in settlement agreement "reasonably read in context"].) The reasonable interpretation of these provisions is that attorneys' fees for class counsel are part of the settlement amount. (See *Kurtin v. Elieff* (2013) 215 Cal.App.4th 455, 471-472 ["courts prefer a more natural reading of text to a less natural one, whether that text be found in a statute . . . or a contract"].) A class member will not be individually billed and obligated to pay for class counsel's fees. If, however, the class member chooses to retain an attorney to object to some aspect of the settlement, the class member will be responsible for paying that attorney.

Brennan also argues that the "misinformation" about responsibility for attorneys' fees "is compounded by the fact that the Notice failed to advise class members that they even had a right to object to Class Counsel's attorneys' fee request." The notice, however, states: "If you are dissatisfied with any of the terms of the Settlement you may object to the Settlement." The notice also states: "The Court will hold a final approval hearing . . . to determine whether the Settlement should be finally approved as fair, reasonable, and adequate. The Court will also be asked to approve Class Counsel's request for attorneys' fees and costs and the Class Representative payments. . . ." The notice advises the class members that settlement will be reduced by "Class Counsel's fees not to exceed $6,333,333.33 . . . ." The notice, read reasonably and considered in its entirety, sufficiently advises class members of the amount of attorneys' fees class counsel were requesting and of the class members' right to object to the request.

B.    *The Trial Court's Method for Calculating Attorneys' Fees Was Proper and the Award Was Reasonable*

Brennan argues that the trial court erred by calculating the amount of class counsel's attorneys' fees based on a percentage of the common fund, rather than the lodestar method. He cites the statement in *Lealao v. Beneficial California, Inc.*, *supra*, 82 Cal.App.4th 19 that the "primary method for establishing the amount of 'reasonable' attorney fees is the lodestar method." (*Id.* at p. 26.) While Brennan is correct that, as a general rule, the lodestar method is the primary method for calculating attorneys' fees, the percentage approach may be proper where, as here, there is a common fund.

1.    Standard of Review

We review an award of attorneys' fees in a class action settlement under an abuse of discretion standard. (*Carter v. City of Los Angeles* (2014) 224 Cal.App.4th 808, 819; *Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1004.) "'"The 'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed

15

unless the appellate court is convinced that it is clearly wrong[']"—meaning that it abused its discretion. [Citations.]' [Citation.] "'""[T]he appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.""' [Citations.]" [Citation.] . . . We defer to the trial court's discretion "because of its 'superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.' [Citation.]" [Citation.]' [Citation.]" (*Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1249; accord, *Holguin v. DISH Network LLC* (2014) 229 Cal.App.4th 1310, 1329; *Collins v. City of Los Angeles* (2012) 205 Cal.App.4th 140, 159.) The "[f]ees approved by the trial court are presumed to be reasonable, and the objectors must show error in the award." (*Consumer Privacy Cases* (2009) 175 Cal.App.4th 545, 556; see *Dunk v. Ford Motor Co.*, *supra*, 48 Cal.App.4th at p. 1809.)

## 2. Percentage of the Common Fund

In *Lealao v. Beneficial California, Inc.*, *supra*, 82 Cal.App.4th 19 the court stated that "[t]he primacy of the lodestar method in California was established in 1977 in *Serrano* [*v. Priest* (1977)] 20 Cal.3d 25. . . . [O]ur Supreme Court declared: '"The starting point of every fee award . . . must be a calculation of the attorney's services in terms of the time he has expended on the case."'" (*Id.* at p. 26.) The court added that "[i]n so-called fee shifting cases, in which the responsibility to pay attorney fees is statutorily or otherwise transferred from the prevailing plaintiff or class to the defendant, the primary method for establishing the amount of 'reasonable' attorney fees is the lodestar method. The lodestar (or touchstone) is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate. Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality

16

of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented. [Citation.]"**7** (*Ibid.*)

The court in *Lealao* was discussing the circumstances in which trial courts could use the percentage of fund method, rather than the lodestar method, to calculate the amount of attorneys' fees to award to class counsel. The court explained that "[f]ee spreading occurs when a settlement or adjudication results in the establishment of a separate or so-called common fund for the benefit of the class. Because the fee awarded class counsel comes from this fund, it is said that the expense is borne by the beneficiaries. Percentage fees have traditionally been allowed in such common fund cases, although, as will be seen, the lodestar methodology may also be utilized in this context." (*Lealao v. Beneficial California, Inc.*, *supra*, 82 Cal.App.4th at p. 26.) The court noted that, "[b]ecause the common fund doctrine 'rest[s] squarely on the principle of avoiding unjust enrichment' [citations], attorney fees awarded under this doctrine are not assessed directly against the losing party (fee shifting), but come out of the fund established by the litigation, so that the beneficiaries of the litigation, not the defendant, bear this cost (fee spreading). Under federal law, the amount of fees awarded in a common fund case may be determined under either the lodestar method or the percentage-of-the-benefit approach [citation], although, about a decade ago, as the Ninth Circuit then noted, there commenced a 'ground swell of support for mandating the percentage-of-the-fund approach in common fund cases.' [Citation.] Prior to 1977,

---

**7** "'[T]he lodestar is the basic fee for comparable legal services in the community; it may be adjusted by the court based on factors including . . . (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award. [Citation.] The purpose of such adjustment is to fix a fee at the fair market value for the particular action. In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services.'" (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 579; see *Chodos v. Borman* (2014) 227 Cal.App.4th 76, 92.)

when the California Supreme Court decided *Serrano* [*v. Priest*], *supra*, 20 Cal.3d 25, California courts could award a percentage fee in a common fund case.  [Citation.]  After *Serrano* . . . , it is not clear whether this may still be done."  (*Id.* at p. 27.)

Subsequent judicial opinions have made it clear that a percentage fee award in a common fund case "may still be done."  For example, in *Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43 the court stated that "the *Lealao* court did not purport to mandate the use of one particular formula in class action cases.  The method the trial court used here and that [was] discussed in *Lealao* are merely different ways of using the same data—the amount of the proposed award and the monetized value of the class benefits—to accomplish the same purpose: to cross-check the fee award against an estimate of what the market would pay for comparable litigation services rendered pursuant to a fee agreement.  [Citation.]"  (*Id*. at p. 65.)  Therefore, "fees based on a percentage of the benefits are in fact appropriate in large class actions when the benefit per class member is relatively low . . . ."  (*Id.* at p. 63.)

In *Consumer Privacy Cases*, *supra*, 175 Cal.App.4th 545 the court explained that "[r]egardless of whether attorney fees are determined using the lodestar method or awarded based on a 'percentage-of-the-benefit' analysis under the common fund doctrine, '"[t]he ultimate goal . . . is the award of a 'reasonable' fee to compensate counsel for their efforts, irrespective of the method of calculation."  [Citations.]' [Citation.]  It is not an abuse of discretion to choose one method over another as long as the method chosen is applied consistently using percentage figures that accurately reflect the marketplace.  [Citation.]"  (*Id*. at pp. 557-558; accord, *Chavez v. Netflix, Inc.*, *supra*, 162 Cal.App.4th at pp. 65-66; see *Consumer Cause, Inc. v. Mrs. Gooch's Natural Food Markets, Inc.* (2005) 127 Cal.App.4th 387, 397 [the common fund doctrine is "frequently applied in class actions when the efforts of the attorney for the named class representatives produce monetary benefits for the entire class"]; *Wershba v. Apple Computer, Inc.*, *supra*, 91 Cal.App.4th at p. 254 ["[c]ourts recognize two methods for calculating attorney fees in civil class actions: the lodestar/multiplier method and the

percentage of recovery method"].)**8** The percentage of fund method survives in California class action cases, and the trial court did not abuse its discretion in using it, in part, to approve the fee request in this class action.

Finally, contrary to Brennan's assertion, the trial court's use of a percentage of 33 1/3 percent of the common fund is consistent with, and in the range of, awards in other class action lawsuits. In *Chavez v. Netflix, Inc.*, *supra*, 162 Cal.App.4th 43 the court held that attorneys' fees of 27.9 percent of the class benefit awarded was "not out of line with class action fee awards calculated using the percentage-of-the-benefit method: 'Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.' [Citation.]" (*Id.* at p. 66, fn. 11; see *Bell v. Farmers Ins. Exchange* (2004) 115 Cal.App.4th 715, 726 ["the court awarded to [class] counsel attorney fees in the amount of 25 percent of the total damages fund recovered for the class"]; *Fischel v. Equitable Life Assur. Society of U.S.* (9th Cir. 2002) 307 F.3d 997, 1006 [recognizing "a 25 percent 'benchmark' in percentage-of-the-fund cases that can be 'adjusted upward or downward to account for any unusual circumstances involved in [the] case'"].)

### 3. Lodestar Cross-check

The trial court did not use the percentage of fund method exclusively to determine whether the amount of attorneys' fees requested was reasonable and appropriate. The

---

**8** The Supreme Court in *Serrano* even recognized the viability of the "percentage of the common fund" method. The court observed that "the so-called 'common fund' exception to the American rule regarding the award of attorneys fees (i.e., the rule set forth in section 1021 of our Code of Civil Procedure), is grounded in 'the historic power of equity to permit the trustee of a fund or property, or a party preserving or recovering a fund for the benefit of others in addition to himself, to recover his costs, including his attorneys' fees, from the fund of property itself or directly from the other parties enjoying the benefit.' [Citation.] [¶] First approved by this court in the early case of *Fox v. Hale & Norcross S. M. Co.* (1895) 108 Cal. 475 . . . , the 'common fund' exception has since been applied by the courts of this state in numerous cases. [Citations.]" (*Serrano v. Priest*, *supra*, 20 Cal.3d at p. 35.)

trial court also performed a lodestar calculation to cross-check the reasonableness of the percentage of fund award. This was entirely proper. "[A]lthough attorney fees awarded under the common fund doctrine are based on a 'percentage-of-the-benefit' analysis, while those under a fee-shifting statute are determined using the lodestar method, '[t]he ultimate goal . . . is the award of a "reasonable" fee to compensate counsel for their efforts, irrespective of the method of calculation.' [Citations.]" (*Apple Computer, Inc. v. Superior Court* (2005) 126 Cal.App.4th 1253, 1270.) It therefore is appropriate for the trial court to cross-check an award of attorneys' fees calculated by one method against an award calculated by the other method in order to confirm whether the award is reasonable. (See *Consumer Privacy Cases*, *supra*, 175 Cal.App.4th at p. 557; *Cundiff v. Verizon California, Inc.* (2008) 167 Cal.App.4th 718, 724; see also *In re Bluetooth Headset Products Liability Litigation* (9th Cir. 2011) 654 F.3d 935, 944, 945 (*Bluetooth*) ["we have also encouraged courts to guard against an unreasonable result by cross-checking their calculations against a second method," and "the lodestar method can 'confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate'"]; *Shaffer v. Continental Cas. Co.* (9th Cir. 2010) 362 Fed.Appx. 627, 632 [district court properly "used the lodestar method to cross-check the percentage method"]; *Vizcaino v. Microsoft Corp.* (9th Cir. 2002) 290 F.3d 1043, 1050 [district court did not abuse its discretion in "apply[ing] the lodestar method as a cross-check of the percentage method" because "the lodestar may provide a useful perspective on the reasonableness of a given percentage award"].)

Brennan argues that, in connection with the court's lodestar calculations, class counsel did not submit detailed attorney time records. Such detailed time records, however, are not required. "It is well established that 'California courts do not require detailed time records, and trial courts have discretion to award fees based on declarations of counsel describing the work they have done and the court's own view of the number of hours reasonably spent. [Citations.]' [Citations.]" (*Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 698-699; *Chavez v. Netflix, Inc.*, *supra*, 162 Cal.App.4th at p. 64 ["detailed timesheets are not required of class counsel to support fee awards in class

20

action cases"].)  The trial court did not abuse its discretion by relying on the hours worked and hourly rates provided by each of the class attorneys, and the description of the work the attorneys performed, in calculating a lodestar cross-check on the award.

The trial court followed a process similar to the one approved in *Sutter Health Uninsured Pricing Cases* (2009) 171 Cal.App.4th 495.  There, the Court of Appeal affirmed the trial court's order approving class counsel attorneys' fees as a percentage of a common fund after a lodestar "'cross-check to test the reasonableness of [the] amount.'"  (*Id.* at pp. 503, 512.)  The court observed that "several law firms worked for class plaintiffs and all submitted declarations attesting to the hours worked and hourly rates of the various specific attorneys who worked on this case.  Most of these declarations were summaries and . . . the lead firm . . . did not submit hourly timesheets. [¶]  Courts have held that such detail is not required.  [Citations.]  We see no reason why [the trial court] could not accept the declarations of counsel attesting to the hours worked, particularly as [the court] was in the best position to verify those claims by reference to the various proceedings in the case."  (*Id.* at p. 512.)  The trial court here did not abuse its discretion in performing a lodestar calculation based on the declarations of class counsel to cross-check the percentage of fund award.


        4.     Lodestar 2.13 Multiplier

Class counsel's proposed lodestar was $2,968,620 without an appeal and $3,118,620 including an appeal.  Class counsel asked the court to apply a multiplier of 2.02 to 2.13 to the lodestar cross-check to support the total fee request of $6,333,333.33. Brennan acknowledges that "[m]ultipliers can range from 2 to 4 or even higher." (*Wershba v. Apple Computer, Inc.*, *supra*, 91 Cal.App.4th at p. 255; accord, *In re Lugo* (2008) 164 Cal.App.4th 1522, 1546; see *Chavez v. Netflix, Inc.*, *supra*, 162 Cal.App.4th at p. 66 [multiplier of 2.5 was not "out of line with prevailing case law"].)[9]  He argues,

---

[9]    Even the authority Brennan relies on, Judge Richard Posner, has acknowledged that "[t]he need for such [a multiplier] adjustment is particularly acute in class action

21

however, that the trial court erred in applying the multiplier because the court did not have sufficiently detailed attorney time records. Brennan argues that he "seeks to establish a bright-line standard so that class action attorneys who do not submit sufficient evidence to allow the court to 'carefully compile the time spent,' 'carefully review attorneys' documentation of hours,' and 'thoroughly review fee applications' to determine a reasonable lodestar cannot be awarded an enhancement to the lodestar." (Fn. and underscoring omitted.)

As noted, the "bright line standard" is not the law in California. The trial court in each case determines how much information and documentation the court needs in order to make a reasonable attorneys' fees award. (See *G.R. v. Intelligator* (2010) 185 Cal.App.4th 606, 620 [trial court did not abuse its discretion in choosing "to accept the declaration of [defendant's] attorney as sufficient proof of the attorney's hourly rate, the time spent, and the reasonableness of the time spent"].) Moreover, the trial court considered the proper lodestar multiplier factors in determining whether to apply a multiplier, including the difficulty of the issues in this case, the skill of class counsel, the contingent nature of the case, and the preclusion of other employment. (See *Graham v. DaimlerChrysler Corp.*, *supra*, 34 Cal.4th at p. 579; *Chodos v. Borman*, *supra*, 227 Cal.App.4th at p. 92.) Even where, unlike here, the trial court fails to give any explanation for its selection of the multiplier, such a failure does not justify reversal. (*Taylor v. Nabors Drilling USA, LP*, *supra*, 222 Cal.App.4th at p. 1249.) "'In reviewing a challenged award of attorney fees and costs, we presume that the trial court considered all appropriate factors in selecting a multiplier and applying it to the lodestar figure. [Citation.] This is in keeping with the overall review standard of abuse of discretion, which is found only where no reasonable basis for the court's action can be shown. [Citation.]' [Citations.]" (*Id.* at pp. 1249-1250.) The use of a multiplier of 2.13 was not an abuse of discretion.

---

suits." (*Matter of Continental Illinois Securities Litigation* (7th Cir. 1992) 962 F.2d 566, 569.)

Brennan contends the trial court's use of 2012 hourly rates "for work done between 2005 and 2011 amounted to a *de facto* multiplier." Brennan's contention is based on a misreading of the record. The trial court did not mistakenly apply 2012 hourly rates to work performed in prior years. The trial court determined that the hourly rates for the attorneys who worked on the case were reasonable for all years of the litigation. And the trial court had ample basis for making that determination, including evidence of hourly rates from 2002 to 2012. Barnes' declaration included a report based on a survey by the National Law Journal showing hourly rates for 2002 ranging from $500 to $850. The supporting declaration of Richard M. Pearl, an expert on hourly rates of attorneys' fees in California, included a review of hourly rates approved by California courts ranging from $750 to $875. He also reported the result of surveys for 2009 showing hourly rates ranging from $775 to $950. The trial court did not abuse its discretion by using the hourly rates of the attorneys serving as class counsel, nor did the court's use of those rates constitute a de facto multiplier.

Brennan also asserts that "[t]he awarding of any multiplier, much less a multiplier that compensated each attorney's hour at $1,485.65, constituted a basic violation of the common fund doctrine," citing *Garabedian v. Los Angeles Cellular Telephone Co.* (2004) 118 Cal.App.4th 123, 128. *Garabedian* does not prohibit the use of a multiplier. The court in *Garabedian* held that, "[e]ven where the parties agree as to the amount of attorney fees in . . . a settlement agreement, courts properly review and modify the agreed-upon fees if the amount is not reasonable." (*Id*. at p. 127.) Thus, "the judicial determination of 'reasonable' attorney fees . . . does not depend solely upon hourly rates and the number of hours devoted to the case. While these two factors are 'the starting point of every fee award' [citation], numerous other factors must also be considered, including the novelty and difficulty of the issues presented, the quality of counsel's services, the time limitations imposed by the litigation, the amount at stake, and the result obtained by counsel. [Citations.]" (*City of Oakland v. Oakland Raiders* (1988) 203 Cal.App.3d 78, 83; see *Center for Biological Diversity v. County of San Bernardino* (2010) 188 Cal.App.4th 603, 616 ["[a]fter making the lodestar calculation, the court may

23

augment or diminish that amount based on a number of factors specific to the case, including the novelty and difficulty of the issues, the attorneys' skill in presenting the issues, the extent to which the case precluded the attorneys from accepting other work, and the contingent nature of the work"].)  The fact that the multiplier applied may have resulted in an effective increase in the hourly rate does not, without more, establish that the attorneys' fees award was unreasonable.

        C.     *Clear Sailing Provision in Settlement Agreement*

Brennan argues that the inclusion of a clear sailing provision in the settlement agreement was a breach of the fiduciary duty by class counsel in the negotiation of the settlement.  This provision states:  "Class Counsel will apply to the Court for an award of not more than $6,333,333.33 (33.33 [percent] of the Gross Settlement Amount) as their Class Counsel Fees Payment . . . , and Robert Half will not oppose their request. . . .  Brennan relies on the Ninth Circuit's opinion in *Bluetooth*, *supra*, 654 F.3d 935, which includes this statement:  "One inherent risk [in class action settlements] is that class counsel may collude with the defendants, 'tacitly reducing the overall settlement in return for a higher attorney's fee.'  [Citations.]"  (*Id.* at p. 946.)  One sign of such collusion is "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries 'the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class' [citations] . . . ."  (*Id.* at p. 947.)  There is, however, no prohibition on clear sailing provisions, nor is there any evidence that the clear sailing provision in this case reflected any collusion between Laffitte and Robert Half.

"While it is true that the propriety of 'clear sailing' attorney fee agreements has been debated in scholarly circles [citations], commentators have also noted that class action 'settlement agreement[s] typically include[] a "clear sailing" clause . . . .'  [Citation.]  In fact, commentators have agreed that such an agreement is proper.  '[A]n agreement by the defendant to pay such sum of reasonable fees as may be awarded by the

24

court, and agreeing also not to object to a fee award up to a certain sum, is probably still a proper and ethical practice. This practice serves to facilitate settlements and avoids a conflict, and yet it gives the defendant a predictable measure of exposure of total monetary liability for the judgment and fees in a case. To the extent it facilitates completion of settlements, this practice should not be discouraged.' [Citation.]" (*Consumer Privacy Cases*, *supra*, 175 Cal.App.4th at p. 553, fn. omitted; see *Cellphone Termination Fee Cases* (2009) 180 Cal.App.4th 1110, 1120 ["[c]lass action settlements frequently contain a 'clear sailing' agreement, whereby the defendant agrees not to object to an attorney fee award up to a certain amount"].)

In *Bluetooth*, *supra*, 654 F.3d 935 the Ninth Circuit stated that "[c]ollusion may not always be evident on the face of a settlement, and courts therefore must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations. [Citations.] A few such signs are: [¶] (1) 'when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded,' [citations]; [¶] (2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries 'the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class,' [citation]; and [¶] (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund, [citation]." (*Id*. at p. 947.) Even Judge Posner, on whose writings Brennan relies, has written that "[c]lear-sailing clauses have not been held to be unlawful per se, but [where the case] involv[es] a non-cash settlement award to the class, such a clause should be subjected to intense critical scrutiny . . . ." (*Redman v. RadioShack Corp.* (7th Cir., Sept. 19, 2014, Nos. 14-1470, 14-1471, 14-1658, 14-1320) ___ F.3d ___, ___, [2014 WL 4654477 at p. 13].)

Unlike *Bluetooth*, where the "settlement agreement included all three of these warning signs" (*Bluetooth*, *supra*, 654 F.3d at p. 947), the settlement agreement here

contains none of them. As discussed, class counsel received a percentage of the recovery commensurate with percentages awarded in other cases, and the class members received a significant monetary distribution. The clear sailing agreement did not provide for a payment of attorneys' fees separate and apart from the common fund but provided for a payment of attorneys' fees out of the fund. Finally, there was no arrangement that fees not awarded would revert to the Robert Half defendants. (See *In re Toys "R" Us-Delaware, Inc.—Fair and Accurate Credit Transactions Act (FCTA) Litigation* (C.D.Cal. 2014) 295 F.R.D. 438, 458 ["despite the clear sailing provision," the "absence of a 'kicker provision' in the parties' settlement and the fact that the class is receiving reasonable value reduces the likelihood that plaintiffs and [the defendant] colluded to confer benefits on each other at the expense of class members"]; *Larsen v. Trader Joe's Company* (N.D.Cal. 2014) 2014 WL 3404531 at p. 8 ["clear sailing provisions generally do not raise concerns where, as here, the fees are to come from the settlement fund," as opposed to "where attorneys' fees are paid on top of the settlement fund"].) In the absence of any of the recognized warning signs of collusion or other evidence of collusion, the inclusion of a clear sailing provision in the settlement agreement did not constitute a breach of fiduciary duty on the part of class counsel.

## DISPOSITION

The order entering final judgment is affirmed.  The Laffitte class plaintiffs and the Robert Half defendants are to recover their costs on appeal.

SEGAL, J.[*]

We concur:

WOODS, Acting P. J.

ZELON, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

27

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MARK LAFFITTE et al., | B249253 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC321317) |
| v. | |
| ROBERT HALF INTERNATIONAL INC. et al., | ORDER MODIFYING OPINION AND CERTIFYING FOR PUBLICATION; |
| Defendants and Respondents, | NO CHANGE IN JUDGMENT |
| DAVID BRENNAN, | |
| Plaintiff and Appellant. | |

THE COURT:

It is ordered that the opinion filed herein on October 29, 2014, be modified as follows:

1. On page 2, under the Introduction heading, add the following paragraph as the first paragraph:

> This appeal arises from an order overruling objections to a settlement of several wage and hour class actions, and approving the settlement. We hold that rule 3.769 of the California Rules of Court, not rule 23 of the Federal Rules of Civil Procedure, establishes the requirements in California for settlement notices to class members. We also confirm that the percentage of recovery method for calculating an award of attorneys' fees is still viable in common fund cases. Finally, we hold that the presence of a clear sailing provision in a class action settlement does not, without more, invalidate the agreement as collusive.

2.  On page 5, line 4 of the first full paragraph, add the word "and" between the words "counsel" and "supervised" so that the sentence reads in part:

> The declarations stated that Kevin T. Barnes, who served as lead counsel and supervised and handled all aspects of the litigation, . . .

3.  On page 20, second line from the bottom, add the word "see" before the citation *Chavez v. Netflix, Inc.*, *supra*, 162 Cal.App.4th at p. 64.

4.  On page 23, at the beginning of line 10 of the first full paragraph, change the word "of" to "and" so that the sentence reads in part as follows:

> The supporting declaration of Richard M. Pearl, an expert on hourly rates and attorneys' fees in California, . . .

5.  On page 24, line 5 of the paragraph following subheading *C*, at the end of that line after the ellipses, add a closed quotation mark so that line 5 reads as follows:

> . . . Class Counsel Fees Payment . . . , and Robert Half will not oppose their request. . . ."

6.  On page 25, the citation at the end of the first full paragraph should be revised to read as follows:

> (*Redman v. RadioShack Corp.* (7th Cir. 2014) 768 F.3d 622, 637.)

There is no change in the judgment.

The opinion in the above-entitled matter filed on October 29, 2014 was not certified for publication in the Official Reports.  For good cause it now appears that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), and

IT IS HEREBY ORDERED that the words "Not to be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion be published in the Official Reports.


_____          _____          _____
WOODS, Acting P. J.          ZELON, J.          SEGAL, J.[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.