Filed 7/6/22  Turman v. Parent CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| HEATHER TURMAN et al., | |
| Plaintiffs and Appellants, | G060330 |
| v. | (Super. Ct. No. 30-2010-00425532) |
| ARTHUR PARENT, JR., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Kirk H. Nakamura, Judge.  Affirmed.

Bryan Schwartz Law, Bryan J. Schwartz and Cassidy Clark; Altshuler Berzon and Michael Rubin for Plaintiffs and Appellants.

No appearance for Defendant and Respondent.

\*          \*          \*

INTRODUCTION

Former restaurant employees initially filed this case in 2010 as a wage and hour class action against defendants Koji's Japan Incorporated (Koji's) and Arthur Parent, Jr., who had been Koji's president, sole shareholder, and director. After over a decade of litigation which produced several appellate court opinions, the trial court preliminarily approved the parties' class action settlement agreement. As relevant to the issues presented in this appeal, the preliminarily approved agreement provided for the defendants to make a nonreversionary settlement payment in the total gross amount of $2.2 million, which included an attorney fee award in the amount of $1,040,000 and enhancement awards totaling $100,000 to be distributed among the named plaintiffs and declarants. That agreement also provided that unclaimed class payments would be allocated to a designated *cy près* recipient.

The trial court's *final* order and judgment, however, provided for a reduced attorney fee award in the total amount of $880,000 and reduced enhancement awards totaling $55,500. The trial court's final order and judgment did not provide for application of the designated *cy près* recipient and instead provided that unclaimed class payments would be tendered to the State Controller's Office under the Unclaimed Property law. The plaintiffs argue the trial court abused its discretion by reducing the attorney fee and the enhancement awards and also by rejecting the proposed *cy près* recipient.

We review the trial court's final order and judgment for an abuse of discretion. The trial court was not required to explain the reasons why it reduced the attorney fee award or enhancement awards, or why it declined to accept the parties' designated *cy près* recipient. The record does not show the trial court misapprehended the governing legal principles or otherwise abused its discretion in approving the class action settlement and entering judgment. We therefore affirm.

FACTS AND PROCEDURAL HISTORY[1]

In 2000, Koji's was incorporated by Parent. (*Turman v. Superior Court, supra*, G051871.) At all relevant times, Parent was Koji's president, sole shareholder, and director. (*Ibid.*) Koji's owned one sushi and shabu-shabu restaurant in Hollywood, and another such restaurant in Orange County. (*Ibid.*) The individually named plaintiffs had been employed by Koji's and worked at one or both of its restaurants at some point during November 2006 through February 2012. (*Ibid.*) Koji's was not a profitable business and, by early 2012, had closed both restaurants. (*Ibid.*)

## I.

### PLAINTIFFS INITIATE THIS ACTION AND PARENT IS FOUND TO BE A JOINT EMPLOYER

In November 2010, Amanda Quiles, Heather Turman, and Kimberly Dang, as individuals and "on behalf of all others similarly situated, and on behalf of the general public," filed a proposed class action against Koji's and Parent, asserting several state and federal wage and hour claims and alleging violation of California's unfair competition law. (*Quiles v. Koji's Japan Incorporated, supra*, G049238.) Quiles, Turman, and Dang amended their complaint several times to add, among other things, Quiles's individual wrongful employment termination claim in violation of the Fair Labor Standards Act of 1938 (FLSA) (29 U.S.C. § 201 et seq.). (*Quiles v. Parent*, *supra*, 28 Cal.App.5th at pp. 1004-1005.)

"In early 2015, the trial court presided over a bench trial to determine joint employer and alter ego theories of liability. . . . At the conclusion of the bench trial, the

---

[1] On our own motion, we take judicial notice of the following prior opinions in this matter: *Quiles v. Parent* (Mar. 4, 2020, G056687) (nonpub. opn.); *Quiles v. Parent* (Nov. 2, 2018, G054907) (nonpub. opn.); *Quiles v. Parent* (2018) 28 Cal.App.5th 1000; *Turman v. Superior Court* (Nov. 7, 2017, G051871) (nonpub. opn.); *Quiles v. Parent* (2017) 10 Cal.App.5th 130; and *Quiles v. Koji's Japan Incorporated* (Apr. 3, 2015, G049238) (nonpub. opn.).

trial court found Parent qualified as a joint employer under the FLSA." (*Quiles v. Parent*, *supra*, 28 Cal.App.5th at p. 1005, fn. omitted.)

## II.

### THE OPERATIVE COMPLAINT

In October 2015, Quiles, Turman, and Dang were joined by coplaintiffs, Shannon Payne, Lonnie Finley, Joshua Allen, JW Perkins, and Kellianne Ryan in their individual capacities, in filing the operative complaint against Koji's and Parent, styled the "fifth amended individual, class and collective action complaint for damages and restitution."[2] The fifth amended complaint contained claims for (1) failure to pay overtime wages in violation of Labor Code sections 510, 1194, and 1198, and Industrial Welfare Commission (IWC) wage order No. 5-2001 (Cal. Code Regs., tit. 8, § 11050) (IWC wage order No. 5-2001) (first cause of action); (2) failure to pay earned wages upon discharge and waiting time penalties in violation of Labor Code sections 201 through 203 (second cause of action); (3) failure to provide timely, accurate, and itemized wage statements in violation of Labor Code section 226 (third cause of action); (4) failure to provide rest breaks and meal periods in violation of IWC wage order No. 5-2001, and Labor Code sections 226.7 and 512 (fourth cause of action); (5) failure to compensate for all hours worked in violation of Labor Code sections 221 and 223 and IWC wage order No. 5-2001 (fifth cause of action); (6) misappropriation of tips by the employer and the employer's agents in violation of Business and Professions Code section 17200 et seq. (sixth cause of action); (7) failure to pay the minimum wage in violation of Labor Code sections 1182.11, 1182.12, 1182.13, 1194, and 1197, and "the California Minimum Wage Order, MW-2001" (Cal. Code Regs., tit. 8, § 11000) (seventh cause of action); (8) violation of the FLSA (29 U.S.C. §§ 206, 207, 216) (eighth cause of action); (9) unlawful and/or unfair business practices in violation of Business and Professions Code section

---

[2] Quiles later dismissed her class claims and withdrew as a class representative. We hereafter refer to the remaining plaintiffs as "plaintiffs."

4

17200 et seq.) (ninth cause of action); (10) retaliation for protected activity in violation of Labor Code section 98.6 on behalf of Quiles only (tenth cause of action); (11) retaliation for protected activity in violation of the FLSA (29 U.S.C. § 215(a)(3)) on behalf of Quiles only (eleventh cause of action); and (12) recovery of civil penalties pursuant to the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.) (twelfth cause of action).[3]

## III.

### THE TRIAL COURT GRANTS THE PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT AS AMENDED

In 2020, plaintiffs filed a motion for preliminary approval of the settlement of the class action, the FLSA action, and the PAGA action (collectively the class action settlement) in which, subject to final court approval, Koji's and Parent agreed "to make a total, all-in, non-reversionary settlement payment . . . in the amount of $2,200,000." The class action settlement and related stipulation provided that, at the final approval hearing, class counsel would apply to the court to approve the apportionment of the gross settlement amount to include, inter alia, (1) an attorney fee award of no more than $1.040 million to plaintiffs' counsel (class counsel), an amount described as "approximately 47.27 [percent] of the Gross Settlement Amount, and far less than Class Counsel's claimed lodestar of over $2.5 million"; (2) a costs award of no more than $160,000; (3) "an award reimbursing the Settlement Administrator for up to $20,000 for fee and costs"; (4) "enhancement awards totaling up to $100,000 to be distributed among the Named Plaintiffs and declarants and/or deponents . . . for their services and for assuming the risks associated with this Action"; (5) the payment of $50,000 for claims asserted under PAGA of which $37,500 would be paid to the Labor and Workforce Development

---

[3] The class has been certified in this case twice — "once on May 6, 2013 omitting Parent as a joint employer [citation] and then again on February 20, 2018, on remand from the Court of Appeal." The certification of the class is not at issue in this appeal.

Agency (LWDA) and the remaining $12,500 allocated to aggrieved employees, applying the specified formula and conditions; (6) distribution of the remaining amount of the gross settlement amount, following the deductions specified *ante*, to class members on a pro rata basis based on the respective number of shifts worked during the class period; and (7) any uncashed checks to class members after the specified time period and notice procedures were exhausted would be voided and the amount equally divided and allocated to designated *cy près* recipients Wage Justice Center and Legal Aid at Work.

After class counsel provided further information as requested by the trial court, in August 2020, the trial court issued a minute order preliminarily approving the class action settlement amended to, inter alia, remove Legal Aid at Work as a *cy près* designated recipient.

IV.

### PLAINTIFFS FILE A MOTION SEEKING THE TRIAL COURT'S FINAL APPROVAL OF THE AMENDED CLASS ACTION SETTLEMENT

In December 2020, the clerk notified the parties that the case had been reassigned for all purposes to a new trial court judge.

Plaintiffs thereafter filed an unopposed motion for final approval of the class action settlement. Plaintiffs also filed an unopposed motion for attorney fees, reimbursement of costs and enhancement payments, formally seeking the following awards: (1) $1,040,000 in attorney fees; (2) $160,000 in costs; (3) $16,000 "to compensate Rust Consulting, Inc. and $1,200 to reimburse Rutan for settlement administration-related costs"; (4) a $25,000 enhancement payment each for named plaintiffs Turman and Allen; (5) a $15,000 enhancement payment for named plaintiff Dang; (6) a $7,500 enhancement payment for named plaintiff Payne; (6) a $6,000 enhancement payment for named plaintiff Finley; (7) a $5,000 enhancement payment each for named plaintiffs Perkins and Ryan; and (8) a $1,000 enhancement each for

declarants Daryl Swords, Zak Hawkins, Benjamin Morris, Nicole Pacuk, Toni Davidson, and Jessie Musmecci.

In the accompanying memorandum of points and authorities, plaintiffs stated: "The preliminarily-approved *cy près* designee, Wage Justice Center [citation], is a leading non-profit organization based in Los Angeles that provides legal services to low-wage workers in California. In non-reversionary settlements, funds that remain unclaimed by the class should be distributed 'to the fullest extent possible, in a manner designed either to further the purposes of the underlying class action or causes of action, or to promote justice for all Californians.' (Code Civ. Pro. § 384; *In re Microsoft Cases I-V*, *supra*, 135 Cal.App.4th at 722.) The work of Wage Justice is directly aligned with the purposes of the lawsuit, seeking remedies for low-wage workers who suffered wage violations. [Citation.] Given the lengthy litigation, that Defendants' restaurants closed in 2012, and the transient nature of restaurant workers, it is likely that some Class Members will not deposit their settlement checks. Therefore, the next-best destination for such unclaimed funds (after a second distribution to Class Members) would be the Wage Justice Center. [¶] The pre-approved Class Notice clearly described that the intended recipient of unclaimed funds would be the Wage Justice Center, alleviating any due process concerns with having *cy près*."

V.

THE TRIAL COURT ORDERS FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT AFTER REDUCING THE PROPOSED ATTORNEY FEES AND ENHANCEMENT AWARDS AND REJECTING THE DESIGNATED *CY PRÈS* RECIPIENT

The trial court continued the noticed hearing on the motion for final approval of the amended class action settlement and the motion for attorney fees to permit counsel to respond to several issues identified by the court in its minute order, including the lack of information justifying hourly rates of certain individuals and to provide "several exemplars of detailed billing records."

7

Plaintiffs filed a supplemental brief and evidence in response to the court's request.

At the hearing on the motions, the trial court took the matter under submission. In May 2021, the trial court issued a minute order stating:

"The motion for Final Approval is GRANTED with the distributions as noted below. The Court approves the following distributions:

"1. Attorney's fees in the amount of $880,000.00. The Court finds this amount to be a reasonable result in light of the quality of the result obtained, the work performed by class counsel, a review of the billing records provided, and the estimated lodestar. In approving this amount and examining the billing records provided, the Court is not approving the hourly billing rates proposed by class counsel.

"2. Litigation costs in the requested amount of $160,000 is approved.

"3. PAGA penalties in the amount of $37,500 to the LWDA, representing the LWDA's 75 [percent] share of the $50,000 allocated to the PAGA claims.

"4. The Court has discretion to set any incentives. (See *Cellphone Termination Fee Cases* (2010) 186 Cal.App.[4th] 1380.) Accordingly, the Court awards enhancement payments in the amount of $55,500 as follows: [¶] $15,000 for Heather Turman [¶] $15,000 for Joshua Allen [¶] $7,500 for Kimberly Dang [¶] $5,000 for Shannon Payne [¶] $4,000 for Lonnie Finley [¶] $3,000 for JW Perkins [¶] $3,000 for Kellianne Ryan [¶] $500 for Daryl Swords [¶] $500 for Zak Hawkins [¶] $500 for Benjamin Morris [¶] $500 for Nicole Pacuk [¶] $500 for Toni Davidson [¶] $500 for Jessie Musmecci.

"In making this award, the Court has considered the factors set forth in *Golba v. Dick's Sporting Goods, Inc.* (2015) 238 Cal.App.4th 1251 and *Clark v. Am. Residential Servs. LLC* (2009) 175 Cal.App.4th 785.

"5. Administration costs in the amount of $16,000.

8

"A final accounting is set for November 18, 2021 at 2:00 p.m. in Department CX103. Counsel shall submit a final report at least 14 calendar days prior to that hearing regarding the status of the settlement administration. The final report must include all information necessary for the Court to determine the total amount actually paid to class members and any amounts tendered to the State Controller's Office under Unclaimed Property law.

"Plaintiff shall submit an Amended Proposed Order in accordance with the above and include the dates for the final accounting and final accounting report."

The trial court thereafter issued an order granting plaintiff's unopposed motions for final approval of class action settlement by incorporating the terms set forth in its prior minute order; judgment was entered accordingly.

Plaintiffs appealed.

## DISCUSSION

### I.

#### STANDARD OF REVIEW

"We review a trial court's decisions both approving a class action settlement and reviewing an amount awarded for attorney fees for an abuse of discretion. (*In re Microsoft I-V Cases* (2006) 135 Cal.App.4th 706, 723 [review of approval of class action settlement]; *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 [review of amount awarded for attorney fees].)

"Thus, in reviewing approvals of class action settlements, '[w]e do not substitute our notions of fairness for those of the trial court or the parties to the agreement. [Citation.] "To merit reversal, both an abuse of discretion by the trial court must be 'clear' and the demonstration of it on appeal 'strong.'"' [Citation.] '"[G]reat weight is accorded the trial judge's views . . . ."' [Citation.] '""[S]o many imponderables enter into the evaluation of a settlement' [citation], an abuse of discretion standard of appellate review is singularly appropriate."' [Citation.]

9

"A trial court may approve only a settlement of a class action that is fair, adequate, and reasonable. [Citations.] The court has broad discretion in considering whether a proposed settlement satisfies these standards, but it should consider factors such as 'the strength of the plaintiffs' case, the risk, expense, complexity and duration of further litigation as a class action, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of class members to the proposed settlement.'" (*Roos v. Honeywell Internat., Inc.* (2015) 241 Cal.App.4th 1472, 1481-1482, overruled on another ground in *Hernandez v. Restoration Hardware, Inc.* (2018) 4 Cal.5th 260, 269.)

## II.

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY REDUCING CLASS COUNSEL'S ATTORNEY FEE AWARD

Plaintiffs challenge the trial court's final order approving an attorney fee award in the amount of $880,000 which is $160,000 less than the attorney fee award of $1,040,000 that had been proposed in plaintiffs' motions seeking preliminary and final approval of the class action settlement. For the reasons we explain, plaintiffs' challenge is without merit.

### A.

### *The Trial Court Was Not Required to Explain Its Ruling*

In the opening brief, plaintiffs argue the trial court "committed reversible error and abused its discretion by failing to support its dramatically-reduced attorney fee award with any explanation or analysis other than the brief, cryptic reference to class counsel's billing rate."

Plaintiffs do not argue the trial court was required to issue a statement of decision under Code of Civil Procedure section 632, explaining its reasons for approving a reduced attorney fee award. Indeed, plaintiffs did not request one. In *Ketchum v.*

10

*Moses* (2001) 24 Cal.4th 1122, 1140, the Supreme Court rejected the argument that the trial court had erred "by failing to provide a 'reasoned explanation' for denying his objections to specific items in the billing records." The Supreme Court stated: "The superior court was not required to issue a statement of decision with regard to the fee award. [Citation.] Moreover, although Ketchum opposed the motion for attorney fees, he did not request a statement of decision with specific findings. '"All intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown."'" (*Ibid.*; see *569 E. County Boulevard LLC v. Backcountry Against the Dump, Inc.* (2016) 6 Cal.App.5th 426, 440, fn. 17 [defendant "cites no authority suggesting a trial court's determination of the appropriate amount of the fee award will be reversed absent some type of statement of decision, and the law is to the contrary"].)

There is "no California case law analogue to [Code of Civil Procedure] section 632 requiring trial courts to explain their decisions on all motions for attorney fees and costs, or even requiring an express acknowledgment of the lodestar amount." (*Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 67 (*Gorman*).) In *Gorman*, the appellate court explained: "The absence of an explanation of a ruling may make it more difficult for an appellate court to uphold it as reasonable, but we will not presume error based on such an omission. . . . In awarding attorney fees in a lesser amount than requested, trial courts are not required to specify each and every claimed item found to be unsupported or unreasonable." (*Ibid.*; see *569 E. County Boulevard LLC v. Backcountry Against the Dump, Inc., supra*, 6 Cal.App.5th at p. 440, fn. 17 [appellant "cites no authority suggesting a fee award may be reversed merely because the trial court awarded a reduced amount without explicit explanations about disallowed hours or unapportioned hours, and the law appears to be to the contrary"].)

Plaintiffs cite *Gorman* and *Kerkeles v. City of San Jose* (2015) 243 Cal.App.4th 88 (*Kerkeles*) in support of their argument the trial court was required to

explain the reduction in fees because, in each case, the appellate court had reversed the court's attorney fee order.  Both cases are distinguishable from the instant case.

Although in *Gorman*, the appellate court concluded the trial court is not required to engage in explicit analysis on the record, the court reversed and remanded for recalculation of attorney fees because it could not determine any rational basis for the trial court's calculation, which resulted in an award of "a little under 61 percent of [the] lodestar amount."  (*Gorman, supra*, 178 Cal.App.4th at pp. 63-67, 99.)  The appellate court noted the trial court did not give any reason whatsoever for reducing the award below the amount sought by the appellant or explain how it arrived at the amount it chose to award and further noted that although the amount awarded was very precise— $416,581.37—it did not correspond to any calculation the court could discern.  (*Id.* at p. 57, fn. 7.)  The court found that the award appeared to be "snatched whimsically from thin air" and was therefore an abuse of discretion.  (*Id.* at pp. 99-101; but see *Save Our Uniquely Rural Community Environment v. County of San Bernardino* (2015) 235 Cal.App.4th 1179, 1189 ["We respectfully disagree with *Gorman's* analysis.  In our view, the precision of the amount awarded indicates that rather than acting arbitrarily, the trial court applied some rational calculation, even though the appellate court could not discern what it was"].)

Here, however, in contrast to *Gorman*, although the trial court did not explicitly explain how it arrived at the amount of attorney fees it ultimately awarded, it did make it clear that it intended to award a reduced amount of fees than was proposed because the court felt that the amount requested was based on billing rates that were excessive under the circumstances.

*Kerkeles* is also inapplicable because that case involved an award of fees under 42 United States Code section 1988, which arguably requires more detailed explanation for a reduced fee award.  (*Kerkeles*, *supra*, 178 Cal.App.4th at pp. 101-104 [citing federal cases, appellate court held "[w]e thus conclude that the reasoning

12

expressed in the court's order does not meet the *federal* criterion of a clear and specific explanation sufficient for meaningful appellate review"] (italics added).)

B.

*The Record Does Not Show the Trial Court Acted Arbitrarily*

Plaintiffs argue that, in any event, the trial court's reduction in attorney fees was arbitrary and thus constituted reversible error. We disagree.

1.

Use of the Lodestar Method and Percentage of the Common Fund Method in Calculating Attorney Fees in Class Action Litigation

As discussed in plaintiffs' opening brief, class action litigation presents different methods of calculating attorney fee awards, as explained by the California Supreme Court in *Laffitte v. Robert Half Internat. Inc.* (2016) 1 Cal.5th 480, 489 (*Laffitte*):

"Class action litigation can result in an attorney fee award pursuant to a statutory fee shifting provision or through the common fund doctrine when, as in this case, a class settlement agreement establishes a relief fund from which the attorney fee is to be drawn. Two primary methods of determining a reasonable attorney fee in class action litigation have emerged and been elaborated in recent decades. The percentage method calculates the fee as a percentage share of a recovered common fund or the monetary value of plaintiffs' recovery. The lodestar method, or more accurately the lodestar-multiplier method, calculates the fee 'by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate. Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier" to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented.' [Citation.]

13

"The two approaches to determining a fee contrast in their primary foci: 'The lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved.' [Citation.] Each has been championed and criticized for its respective advantages and disadvantages."

In *Laffitte*, the Supreme Court held: "[W]e clarify today that use of the percentage method to calculate a fee in a common fund case, where the award serves to spread the attorney fee among all the beneficiaries of the fund, does not in itself constitute an abuse of discretion. We join the overwhelming majority of federal and state courts in holding that when class action litigation establishes a monetary fund for the benefit of the class members, and the trial court in its equitable powers awards class counsel a fee out of that fund, the court may determine the amount of a reasonable fee by choosing an appropriate percentage of the fund created. The recognized advantages of the percentage method—including relative ease of calculation, alignment of incentives between counsel and the class, a better approximation of market conditions in a contingency case, and the encouragement it provides counsel to seek an early settlement and avoid unnecessarily prolonging the litigation [citations]—convince us the percentage method is a valuable tool that should not be denied our trial courts." (*Laffitte*, *supra*, 1 Cal.5th at p. 503.)

The Supreme Court further held: "We therefore agree with the Court of Appeal below that '[t]he percentage of fund method survives in California class action cases, and the trial court did not abuse its discretion in using it, in part, to approve the fee request in this class action.' We hold further that trial courts have discretion to conduct a lodestar cross-check on a percentage fee, as the court did here; they also retain the discretion to forgo a lodestar cross-check and use other means to evaluate the reasonableness of a requested percentage fee." (*Laffitte*, *supra*, 1 Cal.5th at p. 506.)

14

## 2.

### The Trial Court Did Not Abuse Its Discretion in Awarding Attorney Fees

Here, although the trial court referenced the estimated lodestar, it is unclear how the court calculated the amount of attorney fees awarded. The trial court's minute order stated the court had fully considered the arguments of the parties, both written and oral, as well as the evidence presented, and, after taking the matter under submission, had concluded that an attorney fee award in the amount of $880,000 was appropriate. The court stated it found "this amount to be a reasonable result in light of the quality of the result obtained, the work performed by class counsel, a review of the billing records provided, and the estimated lodestar." The court further stated "[i]n approving this amount and examining the billing records provided, the Court is not approving the hourly billing rates proposed by class counsel."

Plaintiffs' counsel asserted that class counsel's "actual lodestar" at the time of final approval was $2,807,168—an amount exceeding the gross settlement amount itself by over $600,000. Plaintiffs never argued that the "actual lodestar" amount or anything close to it would have been appropriate. Instead, plaintiffs proposed an amount equal to a 63 percent reduction of the actual lodestar amount ($1,040,000). Plaintiffs, therefore, do not criticize the trial court for awarding an amount of attorney fees constituting a mere fraction of plaintiffs' proposed actual lodestar, but that the court found an even smaller fraction of that amount to be appropriate—namely, an amount equal to a 68.5 percent reduction of the actual lodestar. Notably, the court's comments at the hearing on the motion for final approval of the class action settlement and in its minute order show the court did not approve class counsel's hourly billing rates. Therefore, the court's ultimate determination of the "actual lodestar" was likely a smaller number than what plaintiffs had proposed.

In any event we reject plaintiffs' characterization that the court "dramatically" reduced class counsel's "presumptively reasonable lodestar fee." The

15

court ultimately granted an attorney fee award of $880,000 that equaled 40 percent of the gross settlement amount of $2.2 million. Plaintiffs' requested amount of attorney fees in the amount of $1.040 million would have constituted about 47 percent of the gross settlement amount.

We also reject plaintiffs' suggestion that the attorney fee award resulted in a "slashing" of lead counsel's claimed hourly rate of $775 to a mere $243. We first note that lead counsel was only one of several billing attorneys and those attorneys billed in the range of $325 to $550; none of those attorneys billed nearly as high as lead counsel. Plaintiffs' opening brief does not analyze the billing attorneys' respective rates and hours. That being said, and even if we were to assume lead counsel was the sole biller in the case, plaintiffs requested an attorney fee award in an amount that was 63 percent less than the actual lodestar. Plaintiffs' lead counsel's hourly billing rate of $775, if reduced by 63 percent, would be $286.75 an hour—an hourly difference of only $43.75 between the adjusted rate requested by plaintiffs and the rate plaintiffs contend was that effectively awarded by the trial court.

It is of no moment that the trial court had preliminarily approved the class action settlement providing for plaintiffs' requested attorney fees in the amount of $1,040,000. It would be speculation to assume that that amount would have been finally approved had the case not been reassigned to a new trial judge.

Plaintiffs do not offer any authority that the trial court's final attorney fee award, constituting 40 percent of a multimillion dollar class action gross settlement amount, is inappropriate, unreasonable, or arbitrary given the history and circumstances of this case. (See *Lofton v. Wells Fargo Home Mortgage* (2018) 27 Cal.App.5th 1001, 1017 [fee allocation "is done through the equitable power of the court to prevent unjust enrichment" and "courts awarding attorney fees from a common fund recovery ensure that those fees are reasonable and do not unjustly enrich the attorneys at their clients' expense"].) Plaintiffs do not show that the trial court applied an inappropriate

16

methodology, considered improper factors, failed to consider relevant factors, whether under Code of Civil Procedure section 1021.5[4] or otherwise, or engaged in calculation errors in determining the amount of the attorney fees that were ultimately awarded.

Ultimately, we must view the trial court's decision through the lens of the governing standard of review. We have no authority to substitute our decision for that of the trial court. (*Roos v. Honeywell Internat., Inc.*, *supra*, 241 Cal.App.4th at pp. 1481-1482.) "'The trial court is the best judge of the value of professional services rendered in its court, and while its judgment is subject to our review, we will not disturb that determination unless we are convinced that it is clearly wrong.'" (*Ibid.*)

For all of the reasons we have discussed, there is no basis for concluding the trial court abused its discretion in awarding class counsel attorney fees.

III.

THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY REDUCING THE PROPOSED ENHANCEMENT AWARDS OR BY REFUSING TO APPROVE THE *CY PRÈS* PROVISION IN THE PRELIMINARILY APPROVED CLASS ACTION SETTLEMENT

Plaintiffs argue the trial court also abused its discretion by reducing the amount of the enhancement awards provided to the named plaintiffs and declarants, and by failing to approve the designated *cy près* recipient, all as were provided in the preliminarily approved class action settlement. Again, we find no abuse of discretion.

---

[4] Citing *Doe v. Westmont College* (2021) 60 Cal.App.5th 753, 763 (*Doe*), plaintiffs argue we should reverse the trial court's attorney fee award because the court did not state any reasons for its decision to deny an attorney fee award under Code of Civil Procedure section 1021.5. In *Doe*, the appellate court merely stated that in determining whether the trial court abused its discretion, "[w]e first consider 'whether the . . . court applied the proper legal standards,' paying 'particular attention to the . . . stated reasons for denying fees[]'" and "[i]f the court applied incorrect standards, its denial order 'necessarily [fell] outside the scope of [its] discretion' and must be vacated." (*Ibid.*) *Doe* does not stand for the proposition that the trial court must make express findings in determining an award of attorney fees under Code of Civil Procedure section 1021.5.

17

As discussed *ante*, the trial court "must approve a class action settlement agreement . . . only after determining it is fair, adequate, and reasonable." (*In re Microsoft I-V Cases*, *supra*, 135 Cal.App.4th at p. 723.) In exercising its broad discretion to make that determination, the court should consider relevant factors and give "'[d]ue regard . . . to what is otherwise a private consensual agreement between the parties.' [Citation.] Such regard limits its inquiry "'to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." [Citations.] The trial court operates under a presumption of fairness when the settlement is the result of arm's-length negotiation, investigation and discovery that are sufficient to permit counsel and the court to act intelligently, counsel are experienced in similar litigation, and the percentage of objectors is small. [Citation.] Ultimately, the court's determination is simply ""'an amalgam of delicate balancing, gross approximations and rough justice.""" (*Id.* at p. 723.)

Of course, "[o]ur task is limited to a review of the record to determine whether it discloses a clear abuse of discretion when the trial court's determination of fairness is challenged on appeal. We do not substitute our notions of fairness for those of the trial court or the parties to the agreement. [Citation.] 'To merit reversal, both an abuse of discretion by the trial court must be "clear" and the demonstration of it on appeal "strong."'" (*In re Microsoft I-V Cases*, *supra*, 135 Cal.App.4th at p. 723.)

A.

*The Reduced Enhancement Awards*

"While there has been scholarly debate about the propriety of individual awards to named plaintiffs, '[i]ncentive awards are fairly typical in class action cases.' [Citations.] These awards 'are discretionary, [citation], and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their

18

willingness to act as a private attorney general.'" (*Cellphone Termination Fee Cases* (2010) 186 Cal.App.4th 1380, 1393-1394.) "'[T]he rationale for making enhancement or incentive awards to named plaintiffs is that they should be compensated for the expense or risk they have incurred in conferring a benefit on other members of the class.' [Citation.] An incentive award is appropriate '"if it is necessary to induce an individual to participate in the suit[.]"'" (*Id.* at p. 1394.)

Here, the trial court found it appropriate that the named plaintiffs and declarants identified in the preliminarily approved class action settlement receive enhancement awards. The court, however, reduced the proposed enhancement awards overall by roughly half in amount. The trial court did not explain its rationale, and it was not required to do so.

Plaintiffs fail to explain why the amount of enhancement awards they proposed should be afforded deference as "[t]here is no '"presumption of fairness"'" in review of an incentive fee award." (*Cellphone Termination Fee Cases*, *supra*, 186 Cal.App.4th at p. 1395.) It does not matter whether the amounts of the proposed enhancement awards in the class action settlement were "appropriate and reasonable" as argued by plaintiffs because our review is limited to determining whether *the trial court's enhancement awards* were appropriate and reasonable or a clear abuse of discretion. The trial court's preliminary approval of the proposed enhancement awards in the class action settlement was just that—preliminary and not final. In light of the foregoing, and given the trial court's statements that it had become familiar with the history of the lengthy litigation and the evidence before the court, the trial court's enhancement awards did not constitute an abuse of discretion.

## B.

### *The Trial Court's Failure to Approve the Designated Cy Près Recipient*

Plaintiffs argue the trial court erred by failing to approve Wage Justice Center as the *cy près* recipient of unclaimed funds distributed in the preliminarily

19

approved class action settlement and instead requiring that such amounts be tendered to the State Controller's Office under the Unclaimed Property law.

"The doctrine of *cy près* originated in the early English courts of equity with respect to charitable trusts. When compliance with the terms of such a trust became impossible, the court would put the trust funds to 'the next best use' consistent with the donor's dominant charitable intent. [Citation.] 'In the class action context, the *cy près* doctrine is generally denominated "fluid recovery."' [Citation.] Under the latter doctrine, when it is not possible or practicable in a class action judgment to compensate class members according to their respective damages, the best alternative for the court is to award damages in a way that benefits as many of the class members as possible, despite the probability that some class members will not benefit whereas some nonmembers will." (*In re Microsoft I-V Cases*, *supra*, 135 Cal.App.4th at p. 716, fn. omitted.)[5]

In *State of California v. Levi Strauss & Co.* (1986) 41 Cal.3d 460, 479, the Supreme Court stated that "trial courts should have the full range of alternatives at their disposal" when selecting an appropriate method of fluid recovery in a given case. (See *In re Microsoft I-V Cases*, *supra*, 135 Cal.App.4th at p. 724.)

Plaintiffs do not argue that an order directing the payment of unclaimed class funds to the State Controller's Office under the Unclaimed Property law is and of itself improper. Instead, they argue that, because they had designated a *cy près* recipient that had been preliminarily approved after inquiries by the trial court, the trial court was

---

[5] Code of Civil Procedure section 384, subdivision (a) provides: "It is the policy of the State of California to ensure that the unpaid cash residue and unclaimed or abandoned funds in class action litigation are distributed, to the fullest extent possible, in a manner designed either to further the purposes of the underlying class action or causes of action, or to promote justice for all Californians. The Legislature finds that the use of funds for these purposes is in the public interest, is a proper use of the funds, and is consistent with essential public and governmental purposes."

therefore compelled to give final approval of the *cy près* provision of the proposed class action settlement. Plaintiffs do not cite any authority that supports their argument that under such circumstances the trial court no longer has discretion to determine the propriety of a *cy près* provision in a class action settlement, and we have found none.

The trial court did not explain its reasons for not finally approving the *cy près* provision of the proposed class action settlement, but it was not required to do so. Nothing in the record shows the trial court misapprehended the scope of its discretion or the governing legal principles. We cannot substitute our notions of fairness for those of the trial court or the parties to the agreement. Absent a strong demonstration the trial court clearly abused its discretion in ordering final approval of the class action settlement, sans the *cy près* provision, we must affirm. (See *In re Microsoft I-V Cases*, *supra*, 135 Cal.App.4th at p. 723.)

## DISPOSITION

The judgment is affirmed. As respondent did not appear, no costs are awarded.

MARKS, J.*

WE CONCUR:

O'LEARY, P. J.

BEDSWORTH, J.

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

21